**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 10a0205n.06

**No. 08-3978**

**FILED**

**Apr 01, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

JEREMY GARRETT,

      **Plaintiff-Appellant,**

v.

BELMONT COUNTY SHERIFF'S
DEPARTMENT; BELMONT COUNTY JAIL,

      **Defendants-Appellees.**

                                 /

**ON APPEAL FROM THE UNITED**
**STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**

**OPINION**

BEFORE:    SILER, MOORE, and CLAY, Circuit Judges.

      **CLAY, Circuit Judge.**  Plaintiff, Jeremy Garrett, an Ohio state prisoner proceeding *pro se*, appeals the July 9, 2008 *sua sponte* dismissal of his 42 U.S.C. § 1983 claim for failure to state a claim upon which relief can be granted. For the reasons set forth below, we **REVERSE** the district court's order.

**BACKGROUND**

      All facts are taken from the complaint and from Plaintiff's objections to the magistrate judge's Report and Recommendation ("R&R") since those were the facts considered by the district court in its order. Plaintiff alleges that his wife was incarcerated or detained by the Belmont County Sheriff's Department ("Belmont") and was placed on suicide watch while in Belmont's custody

because she had attempted suicide. She was subsequently released on "probation/bond" for some time; while on release, she again attempted suicide. (Dist. Ct. Doc. No. 5, Pl.'s Obj. to R&R, 2). Plaintiff further alleges that Belmont placed his wife in a mental facility where she continued to threaten to commit suicide through letters to Plaintiff. Plaintiff's wife was again released on bond and then succeeded in committing suicide shortly thereafter.

Plaintiff alleges that he repeatedly tried to get prison guards and other officials working for Belmont to investigate the matter when his wife sent him numerous letters between February 6, 2006, and February 28, 2006 threatening to commit suicide. He alleges that, instead of investigating the matter, Defendants mocked him and ignored his request for help. Finally, Plaintiff alleges that he and his children suffered emotional distress because of the loss of their loved one, resulting from Defendants' conduct.

Plaintiff was incarcerated by Belmont at all relevant times and is scheduled to remain incarcerated until 2012. He and his wife have six children, and the pleadings fail to make clear their current situation now that Plaintiff's wife is deceased. Plaintiff seeks monetary damages, burial costs, counseling costs, and an investigation of the prison guards and sheriff's employees implicated, the county jail, and the sheriff's department (collectively "Defendants").

Plaintiff filed a complaint, proceeding *pro se*, on May 9, 2008, along with a motion to proceed *in forma pauperis* in district court, alleging Eighth Amendment and Fourteenth Amendment violations raised under 42 U.S.C. § 1983. The motion to proceed *in forma pauperis* was granted on June 19, 2008 when the magistrate judge filed a R&R recommending that Plaintiff's case be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted.

Plaintiff filed objections to the R&R on June 27, 2008 and the district court entered an order on July 9, 2008 adopting the magistrate judge's R&R with some additional reasoning. This timely appeal followed, which resulted in the case being remanded to the district court to determine whether Plaintiff could proceed *in forma pauperis* on appeal. On February 5, 2009, the district court entered an order directing partial payments for filing fees on appeal and certifying that the appeal is not being taken in good faith, and on August 6, 2009 the district court denied Plaintiff's request for counsel on appeal. Plaintiff also appeals the denial of his request for counsel on appeal.

## DISCUSSION

### I. Standard of Review

This Court reviews *de novo* a district court's *sua sponte* dismissal of a pro se litigant's claim at the pre-docketing screening stage under 28 U.S.C. § 1915(e)(2) for failure to state a claim. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). All well-pleaded allegations in the complaint must be accepted as true at this stage of the litigation. *Id. See also Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937, 1951 (2009) (Courts must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."). *Pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). Liberal construction of *pro se* complaints can include additional allegations set forth in objections to the magistrate judge's R&R at the discretion of the district court and this Court. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993) (construing additional allegations in *pro*

3

*se* petitioner's objections to magistrate judge's R&R as part of allegations of ineffective assistance of counsel in habeas corpus proceeding); *Sellers v. Morris,* 840 F.2d 352, 355 (6th Cir. 1988) (same).

Because the complaint initially appears on its face to raise claims related to Plaintiff's prison conditions due to the prison guards' alleged actions ignoring his requests for assistance, at first glance it would appear that the restrictions of the Prison Litigation Reform Act ("PLRA") would apply. This Circuit has held that district courts have no discretion to allow leave to amend to avoid *sua sponte* dismissal under the PLRA. *See McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997)*.* However, the PLRA did not abrogate the discretion to liberally construe *pro se* complaints. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (continuing to liberally construe *pro se* complaints from prisoners under PLRA). Because this Court finds that Plaintiff's allegations once liberally construed are best interpreted as falling outside the scope of the PLRA, our Circuit's limitation on the authority to grant leave to amend is no longer applicable. *See Jones v. Bock*, 549 U.S. 199, 203-05 (2007) (discussing the policy goals of PLRA as specifically targeting prisoner lawsuits regarding prison conditions); 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect *to prison conditions* under [42 U.S.C. § 1983]. . . .") (emphasis added).

## II.    Analysis

Plaintiff alleges essentially two claims that are both actually better understood as raised in his capacity as the legal representative of his deceased wife: 1) an Eighth Amendment claim for failure to provide appropriate medical treatment on behalf of his wife; and 2) a Fourteenth Amendment claim based on substantive due process for failure to assist his wife when she was

suicidal. While Plaintiff might also be claiming that his own constitutional rights were violated by the prison and its employees, especially in light of the damages sought, taking both his complaint and objections to the R&R together, his arguments are primarily directed at the two claims on behalf of his wife. On both claims, the district court erred by failing to liberally construe Plaintiff's complaint to argue a theory upon which relief could be granted – namely that Belmont and the other Defendants failed to provide proper medical treatment and were deliberately indifferent to Plaintiff's wife's life during the time in which she was in state custody, particularly in the mental institution. Instead, for both claims, the district court found that since Mrs. Garrett was released on bond at the time of her suicide, the state did not have a special relationship with her and she was not in custody; therefore, Plaintiff's claims must be dismissed for failure to state a claim.

## A. Standing

As an initial matter, this Court must consider whether Plaintiff is raising a claim based on an infringement of his own constitutional rights or of his wife's rights. In this Circuit "a § 1983 claim is 'entirely personal to the direct victim of the alleged constitutional tort.'" *Barber v. Overton*, 496 F.3d 449, 457 (6th Cir. 2007) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)); *see also Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984). Therefore, only the victim or her estate's representative may bring a § 1983 claim, and "no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357. Those kinds of injuries are appropriately raised in a state tort law cause of action.

5

Plaintiff alleges some injuries that would not be cognizable as § 1983 claims under *Barber* and *Claybrook*, namely, Plaintiff's and his children's distress at the loss of their loved one. *See Barber*, 496 F.3d at 457-58; *Claybrook*, 199 F.3d at 357-58. The district court implicitly construed the complaint as bringing a cause of action implicating Mrs. Garrett's constitutional rights as well. However, interpreting Plaintiff's claim as raising Mrs. Garrett's constitutional rights as her estate's representative, the question then becomes whether Plaintiff has sufficiently alleged that he is the legal representative of her estate. Again, construing his complaint liberally, Plaintiff has clearly alleged that he is Mrs. Garrett's surviving spouse. Under Ohio law, if Mrs. Garrett died intestate and all of her children are also Plaintiff's children, which Plaintiff also alleges, then Plaintiff would be entitled to the entire estate as the surviving spouse. OHIO REV. CODE ANN. § 2105.06(B) (2009). As the sole person entitled to inherit under Ohio intestacy law, Plaintiff is the most appropriate legal representative of the estate. Therefore, since Plaintiff did allege that he is her spouse and that Mrs. Garrett is deceased, this Court interprets that allegation as sufficient to state a claim that Plaintiff is the legal representative of Mrs. Garrett's estate.

### B.    Eighth Amendment

Plaintiff alleges an Eighth Amendment violation for failure to give appropriate medical attention to his wife. In order to state a claim under this theory, Plaintiff must show that his wife was a prisoner, that she had a serious medical condition, and that Defendants displayed a deliberate indifference to her health. *Estelle v. Gamble*, 429 U.S. 97, 102-06 (1976) (deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed."); *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991) (reiterating the deliberate indifference standard articulated in *Estelle*). The seriousness of the medical condition at issue is usually considered an objective inquiry. Prison officials must provide medical care to prisoners and protect prisoners from conditions that might cause future harm. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (prison officials violate Eighth Amendment if they do not protect prisoners from harms of second-hand smoke). The deliberate indifference standard is analyzed as a subjective prong: Plaintiff would need to show that Defendants in fact knew of his wife's medical condition, should have concluded a substantial risk existed, and actually drew that conclusion. *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). If prison officials reasonably respond to the risk, they will not be held liable even if ultimately the harm is not avoided. *Id.* at 844. Deliberate indifference requires more than simple medical malpractice, and has been described as "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06.

Plaintiff alleges through his additional allegations in the objections he filed that his wife was a prisoner in the custody of Belmont when she first attempted suicide. She was then released on bond, attempted suicide again, and was returned to the custody of Belmont when placed in a mental institution. Finally, she was released again from the mental institution, and then she committed suicide in "the exact way she said she would." (Dist. Ct. Doc. No. 5, Pl.'s Obj. to R&R, 2).

The district court seems to have assumed that Plaintiff's claims only related to his attempts to get assistance for his wife from prison guards *after* his wife was released the second time, ignoring the likelihood that his claim also includes an allegation that it was deliberate indifference to release Mrs. Garrett from the mental institution in the first place. Perhaps this assumption has its roots in

Plaintiff's original complaint that did not include the information about Mrs. Garrett's relationship to Belmont. A more complete reading of Plaintiff's allegations would include those alleged in his filed objections or the district court should have allowed leave to amend to include such allegations. Therefore, construing the complaint to include the factual allegations about Mrs. Garrett's confinement by Belmont in prison and in the mental institution, Plaintiff's allegations should be understood to include the claim that his wife was in custody when her Eighth Amendment rights were violated.

The district court also seems to have assumed that Belmont was required to release Mrs. Garrett from the mental institution or that they did not have any duty to continue to hold her. However, these assumptions seem to contradict the factual allegations Plaintiff added to his objections. Both times Mrs. Garrett was released, Plaintiff alleges that she was on bond. If the state had the authority to place Plaintiff's wife in the mental institution because of her suicide attempt while on bond, it is unclear why they would not have had the authority and the duty to continue to hold her in that institution through the duration of her probation/bond if proper medical care while in state custody (i.e., while in the mental institution) would have included continued confinement. While Belmont might be able to prove that it was required to release Plaintiff's wife and/or that they had no duty to continue to place her in the mental institution because it was not medically necessary, Plaintiff has alleged that his wife was in the custody of Belmont at the mental institution and that she did not receive necessary medical assistance but instead was released.

The district court found that Mrs. Garrett was not in custody at the time of her suicide and so did not address the other two parts of the claim that must be addressed in order for Plaintiff to

8

survive the review of his complaint under 28 U.S.C. § 1915. However, the allegations in Plaintiff's complaint show quite clearly that Defendants were aware of Mrs. Garrett's suicidal nature and the fact that she was suffering from a serious medical condition. Plaintiff has further alleged that Defendants "ignored and mocked" the threats of suicide Plaintiff received from his wife, from which it seems plausible that Plaintiff could prove the subjective prong of deliberate indifference. (Dist. Ct. No. 2, Compl. ¶ 1). Construing Plaintiff's complaint to include the allegations added in his filed objections and reading those allegations liberally, we find that Plaintiff has alleged that his wife was denied appropriate medical care while in Belmont's custody either because her suicidal ideation was not treated sufficiently or because she should not have been released from the mental institution. Therefore, the Eighth Amendment claim should have survived the failure to state a claim analysis.

## C. Fourteenth Amendment

Plaintiff also alleges a related Fourteenth Amendment claim arguing that his wife's substantive due process rights were violated when Defendants failed to take action to protect Mrs. Garrett, knowing of her suicidal ideation. Generally, there is no constitutional duty for "a state or local government entity to protect its citizens from private violence, or other mishaps not attributable to the conduct of its employees." *DeShaney v. Winnebago County Dept. of Soc. Svs.*, 489 U.S. 189, 193-94 (1989) (internal citations omitted). However, there are two recognized exceptions to that general rule. The first is where there is a special relationship between the state and the plaintiff, which usually arises only when the state restrains an individual's liberty. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir. 1995) (collecting cases in which courts have found such a special relationship and noting that it was only in cases of imprisonment and commitment to a

mental institution). The second, and less common, exception is where the danger faced by a plaintiff is state-created, i.e., the state took actions, or failed to take actions, that created or increased the risk of exposure to private violence. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). The district court found that Plaintiff failed to state a claim under either theory.

Once a person is no longer in state custody, the state no longer has a special relationship that falls within the exception that gives rise to a duty to protect that person. *Bynum v. City of Magee, Miss.,* 507 F. Supp. 2d 627, 633 (S.D. Miss. 2007). It was on this basis that the district court dismissed Plaintiff's claim on the theory of a special relationship. *Bynum* also held that the "Constitution does not impose upon a city a duty to hold a suicidal individual for the sole purpose of providing him with medical care." *Id.* However, in addition to not being binding on our Circuit, *Bynum* is distinguishable from this case because in *Bynum*, the deceased had not been placed in a mental institution by the state and then released, nor was the decedent subject to the supervision of the state through probation or bond, as in this case. Plaintiff's wife was in state custody – both incarcerated and in a mental institution – for some of the relevant time, during which time the state had a duty to protect her from suicide. *See Heflin v. Stewart County, Tenn.,* 958 F.2d 709, 716 (6th Cir. 1992).

Additionally, since Plaintiff has alleged that his wife was released on bond both times, it seems apparent from the allegations that the state maintained authority to confine Mrs. Garrett, confirmed by her alleged commitment to the mental institution; consequently, if proper medical treatment required continued commitment to that institution, the state could have confined her on the basis of her probation in addition to her suicidal ideation. It is, of course, possible that

10

Defendants could assert viable defenses to Plaintiff's claim, such as that they no longer had the authority to confine his wife in the mental institution or they did sufficiently respond to her threats of suicide, but those defenses are not before this Court since this case was dismissed before Defendants were served and before they filed any responsive pleadings.

The district court was correct in finding that Plaintiff failed to state a claim for the state-created danger exception since he alleged no facts that would tend to support a theory that Defendants acted in any way that created or increased the risk of suicide. For this theory of relief, Plaintiff's case is very similar to *Bynum*, where police came upon a suicidal person and were called to assist him several other times, because in the instant case Plaintiff's wife was suicidal throughout her interactions with Defendants and Defendants did nothing to encourage those tendencies and in fact tried to assist her by putting her on suicide watch and in a mental institution. *See Bynum*, 507 F. Supp. 2d at 634-35.

The information about Mrs. Garrett's relationship with Belmont was presented for the first time in Plaintiff's objections to the R&R. However, the district court was presented with that information and still dismissed the case for failure to state a claim. The district court erred in not construing Plaintiff's allegations to include a claim that Mrs. Garrett's constitutional rights were infringed while she was in the custody of Belmont, i.e., while she did have a recognized special relationship with Defendants. In other words, Plaintiff has sufficiently alleged a claim that Defendants violated Mrs. Garrett's Fourteenth Amendment right to be protected from suicide when she was released from the mental institution instead of continuing her treatment while she was on probation/bond.

**D.** **Plaintiff's Complaint Was Improperly Dismissed**

Plaintiff's pleadings, when liberally construed, state a claim based on the theory that Plaintiff's wife was in state custody – either incarcerated or held in the mental institution involuntarily – at the time when the appropriate medical attention was not given to her, resulting in her release and opportunity to commit suicide. Since the facts as Plaintiff alleged are sufficient to support that theory, Plaintiff should have been able to proceed past the initial pre-screening process in this case on both the Eighth and Fourteenth Amendment claims. This case is best understood as raising Mrs. Garrett's constitutional rights asserted by Plaintiff as Mrs. Garrett's estate's representative. If Plaintiff's wife had a special relationship with Defendants at the time when the alleged deprivation of medical care took place, then Plaintiff has stated a claim for relief based on violations of the Eighth and Fourteenth Amendments. While Plaintiff, as a *pro se* litigant, may not have included all of the specific factual allegations usually required to show that he is his wife's legal representative and that he was raising her claims, it seems quite apparent that he intended to raise her Eighth and Fourteenth Amendment claims. Because this Court allows *pro se* litigants some leeway in pleading standards, this litigation should proceed to resolve whether the factual underpinnings of Plaintiff's claims might be proven.

## CONCLUSION

Therefore, we **REVERSE** the district court's order dismissing Plaintiff's 42 U.S.C. § 1983 claim for failure to state a claim and **REMAND** with instructions to the district court to permit Plaintiff to proceed as the legal representative of his wife's estate, to permit the filing of the complaint, and to consider whether to appoint counsel to assist Plaintiff in this matter. If the district

court deems it necessary and proper, Plaintiff should be given leave to amend to clarify his legal theory of raising his wife's constitutional claims as the representative of his wife's estate and to sufficiently allege the required factual allegations to support that theory since that claim is not covered by the PLRA.

**SILER**, Circuit Judge, dissenting. I respectfully dissent from the majority opinion in this case for the reasons stated hereafter.

First, there is a valid issue concerning standing on the part of Jeremy Garrett, the plaintiff. As the majority concluded, "a §1983 claim is 'entirely personal to the direct victim of the alleged constitutional tort.'" *Barber v. Overton*, 496 F.3d 449, 457 (6th Cir. 2007) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)). Accordingly, only the victim or her estate's representative may prosecute a § 1983 claim and "no cause of action may lie under [§] 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357. As the majority correctly observes, Garrett does not declare in the complaint that he is prosecuting this action as the fiduciary of his wife's estate. Instead, he seeks relief based on injuries that he suffered as a result of her death. Although Garrett might be entitled to the entire estate as the surviving spouse under Ohio law, he is still not the legal representative of the estate, who must be appointed by a court. Nevertheless, because the issue of standing was not raised nor discussed in the district court, I believe that it would be more appropriate to discuss the case on the merits.

Therefore, my second point of disagreement concerns the merits of the dismissal of the complaint by the district court. The dismissal of a complaint by the district court under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) is reviewed de novo. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

As a threshold matter, Garrett must allege some state action upon which to ground his § 1983 claim. He argues that the defendants knew his wife was suicidal when they took her into custody.

He reasons that by taking her into custody, the defendants assumed the duty to hold her and to provide her with mental health treatment. He takes the position that by releasing her from custody after she had attempted suicide and over the objections of Garrett and other family members, the defendants violated due process.

However, the Due Process Clause does not impose upon the state an affirmative duty to act. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Thus, the "State's failure to protect an individual against private violence"—including violence directed toward one's self—does not violate due process. *Id.* at 197. However, we have recognized two exceptions to the *DeShaney* rule: (1) the "special relationship" exception, and (2) the state-created danger exception. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

Neither exception applies here. The fact that Mrs. Garrett was released from custody prior to her suicide is fatal to the "special relationship" exception. *Id.* A suicidal person does not have a constitutional right to remain in custody indefinitely for her own protection. *See DeShaney*, 489 U.S. at 201 (noting that "the State does not become the guarantor of an individual's safety by having once offered him shelter"). "Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom*, 136 F.3d at 1066. Garrett claims that the defendants acted affirmatively when they released his wife from custody even though she was suicidal. However, no facts suggest that the defendants made Mrs. Garrett vulnerable to "any danger to which she was not already exposed," i.e., her own suicidal tendencies. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1999). The defendants arguably knew that Mrs. Garrett was potentially suicidal when

15

they released her from custody, but they did not create that risk—it was ever present. *See Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (stating a failure to act is not an affirmative act under the state-created-danger theory"). The majority opinion suggests that there may be a constitutional claim under the Eighth Amendment that Mrs. Garrett was not given medical attention while she was in state custody. However, the complaint filed in this case does not make such an allegation. Garrett is not claiming that his cause of action is based upon cruel and unusual punishment to his wife while she was in jail, but that it was cruel and unusual punishment for her to be released on bond. Therefore, I would affirm the district court's dismissal in this case.