*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0116p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JERALD THOMAS,

　　　　　　　*Plaintiff-Appellant,*

*v.*

No. 05-1203

UNKNOWN EBY,

　　　　　　　*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 04-00251—Gordon J. Quist, District Judge.

Argued: December 8, 2006

Decided and Filed: March 30, 2007

Before: SILER, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** David A. Carney, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Linda M. Olivieri, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** David A. Carney, Thomas D. Warren, BAKER & HOSTETLER, Cleveland, Ohio, for Appellant. Linda M. Olivieri, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Jerald Thomas, Baraga, Michigan, pro se.

---

**OPINION**

---

　　　　KAREN NELSON MOORE, Circuit Judge. Inmate Jerald Thomas filed this 42 U.S.C. § 1983 action alleging that a prison guard retaliated against him for exercising his First Amendment rights. The district court concluded that if Thomas won his case, the victory would shorten his period of custodial detention. Accordingly, the district court concluded that the habeas exception to § 1983 barred Thomas's complaint, which the district court dismissed sua sponte. Because a victory for Thomas would have at most the *potential* to decrease his period of detention and because Thomas has alleged adequately the elements of a First Amendment retaliation claim, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings.

1

# I.  BACKGROUND

## A.  Factual Background

Thomas is imprisoned at Baraga Maximum Correctional Facility in Baraga, Michigan.  On October 23, 2003, an exchange occurred between Thomas and Corrections Officer Eby, whose first name is not presently known.  Their accounts of the incident vary wildly.

According to Thomas, he was asleep in his cell at 1:30 a.m. on October 23, when Eby kicked the door to his cell.  After awakening Thomas, Eby told him that she was going to "teach [him] a lesson" for writing a grievance against another corrections officer named Grieke.  Joint Appendix ("J.A.") at 6 (Compl. at 4).  Additionally, Eby told him, "you people are as dumb as you look," *id*., which Thomas interpreted as a slur against African-Americans.

Eby, by contrast, claims that when she came to Thomas's cell, he was already awake and "was standing in the [o]bservation window with his penis exposed masturbating." J.A. at 10 (Major Misconduct Rpt.).  Additionally, she claims that Thomas had heard her speaking to another inmate before she arrived at Thomas's cell, so Thomas must have known that she was on that wing of the facility.  She took this act as an attempt to "degrade" her. *Id*.

Eby memorialized her version of the exchange in a Major Misconduct Report, a copy of which was delivered to Thomas at 11:45 p.m. on October 23, 2003.  The following day, Thomas filled out a grievance form with his version of the events.

## B.  Administrative Proceedings

On November 7, 2003, a hearing officer held a hearing regarding the Major Misconduct Report, and found Thomas and his version of the exchange not credible.  The hearing officer concluded that Thomas had "intentional[ly] expos[ed] his sexual organ to officer Eby," and that Eby had no reason to fabricate the misconduct. J.A. at 14 (Major Misconduct Hr'g Rpt.).  Accordingly, the hearing officer upheld the charge.  Thomas requested a rehearing on November 10, 2003, but the prison's hearings administrator denied this request on February 19, 2004.

On November 11, 2003, prison officials performed the first level of review (Step 1) of Thomas's grievance against Eby, which was handled separately from Thomas's challenge to the Major Misconduct Report.  After an interview with Thomas, the officials rejected the grievance.  Thomas refused to "sign off" at that level of review. J.A. at 12 (Grievance Form).  Thomas's further appeals also proved fruitless, and on January 20, 2004, the responsible prison official issued a final denial of Thomas's grievance appeal.

## C.  Legal Proceedings

In April 2004, Thomas filed a petition for judicial review of his misconduct conviction in the Ingham County Court.  In an order dated May 11, 2004, the state court informed Thomas that he was required to pay $12.21 from his institutional account as an initial partial filing fee, and that if he failed to do so within twenty-one days, the court would dismiss his suit.  Thomas failed to pay the filing fee, and the state court dismissed his action.

On October 25, 2004, Thomas filed a pro se complaint against Eby in the U.S. District Court for the Western District of Michigan, which granted his motion for leave to proceed in forma pauperis. Thomas's complaint alleges that Eby filed the misconduct report against him in retaliation for his earlier grievance against another corrections officer. According to Thomas, Eby's retaliation violated his First Amendment rights, and accordingly is actionable under 42 U.S.C. § 1983. Thomas's complaint requests $75,000 in compensatory damages, another $75,000 in punitive

damages, and "that the Sexual Misconduct ticket be removed from his prison file." J.A. at 8 (Compl. at 6).

On December 16, 2004, before Eby had been served with a copy of the complaint, the district court dismissed Thomas's complaint sua sponte, pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b), and 42 U.S.C. § 1997e(c). The district court concluded that *Edwards v. Balisok*, 520 U.S. 641 (1997), bars Thomas's § 1983 claim because his misconduct conviction led to the forfeiture of "good-time credits," which his suit seeks to restore. J.A. at 29-30 (Dist. Ct. Op. at 3-4). Thomas now appeals the district court's judgment.

Thomas filed a pro se appellate brief on July 11, 2005. On November 22, 2005, we appointed counsel for Thomas and requested both Thomas and nonparty Michigan Department of Corrections ("MDOC")[1] to brief two issues: (1) whether a retaliation claim is subject to the rule of *Edwards v. Balisok*, and (2) whether the provision in Michigan law imposing a loss of good-time credits for Thomas's misconduct is sufficient to trigger the application of *Balisok*.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had federal-question jurisdiction over Thomas's § 1983 claim. 28 U.S.C. § 1331. We have jurisdiction over Thomas's appeal from the district court's final judgment. 28 U.S.C. § 1291.

We review de novo a district court's dismissal of a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000). "Dismissal of a complaint for the failure to state a claim on which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id*. at 867. We must "construe the complaint in the light most favorable to the plaintiff [and] accept all well-pleaded factual allegations as true." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (reviewing dismissal under Federal Rule of Civil Procedure 12(b)(6)). Further, we hold pleadings filed by a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and may not uphold the dismissal of such a pleading "simply because [we] find[] the plaintiff's allegations unlikely." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## III. ANALYSIS

### A. *Rooker-Feldman* Doctrine

MDOC argues that the *Rooker-Feldman* doctrine bars Thomas's claim. Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.,* 544 U.S. 280, 284 (2005)). Courts "appl[y] the doctrine only when a plaintiff complains of injury from the state court judgment itself." *Id*. at 858.

We conclude that the *Rooker-Feldman* doctrine does not apply. Thomas complains of injury resulting from alleged retaliation, not from the state court's judgment. Also, the only state-court judgment at issue here is the Ingham County Court's dismissal, for failure to pay the filing fee, of Thomas's action seeking review of his misconduct conviction. The state court never had occasion

---

[1] Although it is not a party to this case, we requested a brief from MDOC because Eby, the sole defendant, had not been served when the district court dismissed Thomas's complaint. MDOC graciously prepared a lengthy brief.

to determine any issues relevant to this case, as it never reached the merits. Moreover, Thomas can win his retaliation claim without invalidating any aspect of the state court's judgment. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 517 (6th Cir. 2004) (rejecting *Rooker-Feldman* bar when the federal court could find for plaintiff without concluding that the state court decided any issue wrongly), *cert. denied*, 544 U.S. 961 (2005). For all these reasons, the *Rooker-Feldman* doctrine does not bar Thomas's claim.[2]

## B.  Applicability of the Habeas Exception to § 1983

Thomas's § 1983 claim alleges that Eby issued the misconduct ticket in retaliation for a previously filed grievance, and asks that the finding of misconduct be set aside (in addition to including a request for damages). The district court concluded, and MDOC now argues, that such a claim is not cognizable under § 1983 and must instead be brought through a petition for a writ of habeas corpus.

Federal courts have long recognized the potential for prisoners to evade the habeas exhaustion requirements by challenging the duration of their confinement under 42 U.S.C. § 1983, rather than by filing habeas petitions. Consequently, the Supreme Court recognized a "habeas exception" to § 1983 in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), when it held that suits challenging the fact or duration of confinement fall within the traditional scope of habeas corpus and accordingly are not cognizable under § 1983. The Court expanded the habeas exception to § 1983 in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). In *Heck*, the Court determined that, unless a prisoner's conviction or sentence were previously set aside by a separate legal or administrative action, § 1983 would not countenance claims for damages if a finding for the plaintiff would *necessarily invalidate* a conviction or sentence. And in *Balisok*, the Court concluded that a prisoner cannot use § 1983 to challenge prison procedures employed to deprive him of good-time credits when the alleged procedural defect alleged would, if established, "necessarily imply the invalidity of the punishment imposed." 520 U.S. at 648.

After the district court issued its opinion, the Supreme Court decided *Wilkinson v. Dotson*, 544 U.S. 74 (2005). There, the Court reviewed the habeas-exception cases and stated:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred . . .—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id*. at 81-82. Applying this rule, the Court concluded that the plaintiffs' challenges to parole procedures could proceed under § 1983 because they did not automatically imply shorter sentences. Instead, the best outcome that one of the *Dotson* plaintiffs could obtain was a "new eligibility review, which will speed *consideration* of a new parole application." *Id*. at 82. And success for the other plaintiff would entitle him "at most" to "a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term." *Id*. Thus, *Dotson* establishes that when the relief sought in a § 1983 claim has only a *potential* effect on the amount of time a prisoner serves, the habeas bar does not apply.[3]

---

[2] We leave open, and express no opinion regarding, the question of what relief Thomas may obtain if he proves his § 1983 claim.

[3] A mirage of tension between *Balisok* and *Dotson* exists. In *Balisok*, the Court focused on whether proving the plaintiff's case would "necessarily imply the invalidity of *the punishment imposed*." 520 U.S. at 648 (emphasis added). By contrast, the *Dotson* Court's focus was wholly on whether a successful § 1983 action necessarily would

Because "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation," *Muhammad v. Close*, 540 U.S. 749, 754 (2004), we consult Michigan law to determine whether the habeas bar applies to Thomas's claim. Michigan does have a "good time" program,[4] but MDOC concedes that Thomas committed his underlying offense too late to be eligible for the program. Instead, MDOC acknowledges that it administers Thomas's sentence under the less-generous "disciplinary credit" scheme. Under this program, Michigan prisoners may "earn a disciplinary credit of 5 days per month" served. MICH. COMP. LAWS § 800.33(5). "Accumulated disciplinary credits shall be deducted from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility date and discharge date." *Id*. § 800.33(3). However, "[a] prisoner shall not earn disciplinary credits under this subsection during any month in which the prisoner is found guilty of having committed a major misconduct," *id*. § 800.33(5), so under Michigan law, Thomas's conviction of the sexual misconduct deprived him of at least five days of disciplinary credit.[5]

MDOC claims that Thomas's loss of disciplinary credits necessarily lengthens his sentence, and that Thomas's § 1983 claim therefore is barred under the habeas exception. However, the decision in *Ryan v. Department of Corrections*, 672 N.W.2d 535 (Mich. Ct. App. 2003), belies this argument. *Ryan* notes that disciplinary "credits are explicitly tied to a prisoner's parole eligibility date and discharge date. . . . Thus, credits do not determine when a sentence expires or is completed, but only when a prisoner is subject to parole or discharge." *Id*. at 541. This passage and the statute's text demonstrate that, as in *Dotson*, success in Thomas's § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole. Accordingly, the habeas exception does not bar Thomas's § 1983 claim.

## C. Elements of a Retaliation Claim

MDOC argues that even if the district court erred in applying the habeas exception to bar Thomas's claim, its decision should be affirmed on the alternate ground that Thomas cannot prove any set of facts sufficient to establish a retaliation claim. According to MDOC, the administrative determination that Thomas actually committed the sexual misconduct precludes him from being able to establish retaliation.

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

---

affect the length of custody. 544 U.S. at 82. This apparent tension vanishes once one considers "the punishment imposed" in *Balisok*—a deprivation of good-time credits, which typically have an automatic effect on the amount of time an inmate is incarcerated. *See Balisok*, 520 U.S. 646. Accordingly, in both cases, the Court focused on the same issue: the length of custody.

[4] Notwithstanding this observation, we express no opinion regarding whether Michigan's "good time" credit system is analogous to the system at issue in *Balisok*.

[5] The conviction could have deprived him of more than the five days of disciplinary credit, as "[t]he warden may order that a prisoner found guilty of a major misconduct . . . forfeit all or a portion of the disciplinary credits accumulated prior to the month in which the misconduct occurred." MICH. COMP. LAWS § 800.33(5).

### 1. Protected Conduct

Thomas alleges that his filing a grievance against a corrections officer is protected conduct. We have previously recognized that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Thomas adequately alleges this element.

MDOC objects, claiming that Thomas did not plead that his grievance was not frivolous. It is true that filing frivolous grievances is not protected conduct, *Herron*, 203 F.3d at 415, but MDOC misconstrues the pleading standard. The purpose of notice pleading is to "giv[e] the opposing party fair notice of the nature and basis or grounds of" the claim. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (3d ed. 2004). Thomas's pleading accomplishes this goal. Furthermore, the Supreme Court recently rejected an argument similar to MDOC's. *Jones v. Bock*, 549 U.S. ---, 127 S. Ct. 910 (2007) (rejecting argument that the Prison Litigation Reform Act requires plaintiffs to plead exhaustion of administrative remedies). Lastly, Thomas's complaint fails only if he can prove *no set of facts* that would entitle him to relief. *See Herron*, 203 F.3d at 414. As discussed below, Thomas could prove various facts that would establish that the grievance was not frivolous. Accordingly, Thomas had no duty to plead that this grievance was not frivolous.

MDOC also cites an unpublished order for the proposition that guilt of misconduct negates an allegation of protected conduct. The case, *Thomason v. Coble*, 100 F. App'x 522 (6th Cir. 2004) (unpublished order), involves a claim that prison officials issued a retaliatory write-up in response to the plaintiff's attempt to get medical care. Because the plaintiff pleaded guilty to the disciplinary write-up, we concluded that he had violated a legitimate prison regulation and accordingly was not engaged in constitutionally protected conduct. *Id.* at 523. The order provides no authority or rationale for this conclusion, and because it is unpublished, we are not bound by it. *See* 6th Cir. R. 206(c). Further, the case is distinguishable, as Thomas's asserted protected activity (filing a grievance) and the basis for his write-up (sexual misconduct) were entirely different. Such is not true—or at least it is not clear—in *Thomason*. Accordingly, we decline to follow *Thomason*.

### 2. Adverse Action

Thomas claims that Eby's issuing him the sexual-misconduct ticket constitutes an adverse action. Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets. Accordingly, Thomas has adequately alleged a sufficiently adverse action.

MDOC disagrees on two fronts. First, it argues that Thomas claims in his complaint and his pro se brief that the misconduct ticket was "false," and that the result of the administrative appeal process disproves this allegation. The alleged falsity of the ticket, however, addresses causation, and accordingly is discussed below. Second, MDOC argues that Thomas's subsequent conduct—filing a grievance against Eby and then filing this lawsuit—demonstrates that issuing a major-misconduct ticket did not deter him from exercising his constitutional rights. This argument is flawed in at least two ways. First, the issue is whether a person of ordinary firmness would be deterred, not whether Thomas himself actually was deterred. Second, if subsequently challenging prison officials *ipso facto* demonstrated that the challenged action was not sufficiently adverse to undermine constitutional rights, no case alleging retaliation for exercising First Amendment rights could ever be brought. Thus, we totally reject the argument that the later filing of complaints or grievances against challenged action demonstrates that the challenged action was not sufficiently adverse to constitute adverse action.

### 3. Causation

The parties' primary dispute centers on causation. Because the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive. *See Thaddeus-X*, 175 F.3d at 399; *Leonard v. Robinson*, --- F.3d ----, No. 05-1728, 2007 WL 283832, at *11 (6th Cir. Feb. 2, 2007).

According to MDOC, Thomas cannot show causation without first demonstrating that the misconduct charge was ultimately resolved in his favor, which he cannot do because he was convicted and the conviction was affirmed in the prison's review process. In other words, MDOC argues that because the administrative process concluded that Eby's allegations were not false, Thomas cannot show a retaliatory motive. In essence, MDOC's argument imports the favorable-termination requirement of *Heck* into cases where the habeas exception to § 1983 does not apply.

On *summary judgment*, we analyze the causation element of a retaliation claim under the burden-shifting framework announced in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *Thaddeus-X*, 175 F.3d at 399. After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity. *Id.* MDOC cites *Henderson v. Baird*, 29 F.3d 464 (8th Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995), as well as a bevy of our unpublished opinions relying on *Henderson* and *Hynes v. Squillace*, 143 F.3d 653 (2d Cir.), *cert. denied*, 525 U.S. 907 (1998), in support of the proposition that a proven infraction of prison rules will generally satisfy the defendant's burden. Notably, each of these cases was decided on summary judgment, and therefore, each is distinguishable from the present case, which the district court dismissed sua sponte before service of the complaint on the sole defendant, Eby.

However, MDOC cites no case applying the *Mount Healthy* standard on a motion to dismiss, and for good reason—it makes little sense to apply it at the pleading stage. A complaint cannot be dismissed unless "the plaintiff can prove *no set of facts*" that would entitle him to relief. *Brown*, 207 F.3d at 867 (emphasis added). Here, Thomas could establish multiple sets of facts that would prove his § 1983 claim. For example, it is possible that after discovery, Thomas would be able to demonstrate that inmates regularly expose their genitals to guards without consequence. Or perhaps he could prove that he had exposed himself to Eby in the past, but she had never pursued disciplinary action until after he filed a grievance against another guard. In either of these cases, Thomas would be able to show that his filing a grievance was "a motivating factor" behind the misconduct ticket. *Thaddeus-X*, 175 F.3d at 399. And Eby likely would be unable to meet her burden to "show that [s]he would have taken the same action in the absence of the protected activity." *Id.* While it may be unlikely that Thomas could prove such facts, the district court cannot dismiss a pro se prisoner's pleading merely "because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Accordingly, we conclude that Thomas adequately pleaded a claim for retaliation.

## IV. CONCLUSION

As the Supreme Court has recently recognized, "Our legal system . . . remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Jones*, 127 S. Ct. at 914. Ensuring that claims are not thrown out before an adequate opportunity to consider their merit is essential to that guarantee.

For the reasons described above, we conclude that the district court's sua sponte dismissal of Thomas's complaint was unwarranted, at least at this stage of the litigation. Accordingly, we

**REVERSE** the district court's judgment and **REMAND** the case for further proceedings consistent with our analysis.