NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0056n.06

**No. 09-3068**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 25, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DAVID E. CLARK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| N. JOHNSTON, et al., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:  KENNEDY, COLE, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.**  Plaintiff David E. Clark challenges the district court's grant of summary judgment for defendants, Art James and L. Johnson, in Clark's claim under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment.  Clark claims that the defendants were not entitled to qualified immunity on this claim because he presented enough evidence to establish a constitutional violation.  However, because Clark failed to demonstrate the protected conduct required to make out a retaliation claim, he failed to establish the necessary constitutional violation and the district court's grant of summary judgment must stand.  Clark also challenges the district court's sua sponte dismissal of his other retaliation claim, his denial-of-access-to-courts claim, and his equal-protection claim, and Clark argues that the district court abused its discretion in making several discretionary rulings.  Because of the liberal pleading requirements for pro se litigants,

Clark's other retaliation claim must be reinstated, but the dismissal of his remaining claims must be affirmed. Moreover, Clark's challenge to the district court's discretionary rulings lacks merit.

## I.

In March 2007, Clark, a prisoner in the Ohio State Penitentiary (OSP) acting pro se, filed a civil rights complaint against various prison officials pursuant to § 1983. Clark named thirteen defendants in his original complaint, including James and Johnson, and alleged due process violations, cruel and unusual punishment, denial of access to courts, and violations of the First and Sixth Amendments. Clark described the conduct of prison officials from March 2005 through June 2005, as constituting "a pattern of calculated harassment and retaliation in response to [Clark's] testifying in federal court in a civil rights lawsuit brought by the ACLU . . ., and for complaining about actions of individual staff, and conditions in [the] prison." Specifically, Clark asserted that prison officials conducted a "pack-up" of his personal property "in violation of established institution and department policy," singled him out for a 2.4 policy inspection of his belongings,[1] denied him access to his legal property, and retaliated against him when he attempted to complain about his treatment to an official from the Ohio Department of Rehabilitation and Corrections (ODRC) who was visiting the prison.

On June 27, 2007, Clark filed an amended complaint with the district court. This complaint included the same thirteen defendants and added four more named defendants and one John Doe.

---

[1]This prison policy limits the amount of personal and legal property an inmate may possess, without special authorization, to not more than 2.4 cubic feet.

In his amended complaint, Clark alleged violations of his Fourteenth Amendment property rights, equal protection rights, First Amendment rights, Sixth Amendment rights, and Eighth Amendment rights. Clark claimed that prison staff "conspir[ed] to violate [his] constitutional rights both for [his] participation and testimony in federal court in a class action against [the prison], and for [his] complaints against some of them individually." In particular, Clark asserted that he was deprived of various items of personal property in violation of established prison policy, selectively chosen by prison officials for enforcement action, retaliated against for filing complaints and grievances against prison officials, threatened by a prison official, denied access to the courts through the deprivation of his legal property, placed in segregation pursuant to false conduct reports, and entrapped into making a forbidden three-way telephone call and subsequently punished for this call.

On July 12, 2007, the district court dismissed all of Clark's claims sua sponte and pursuant to 28 U.S.C. § 1915(e), except part of his retaliation claim against James and Johnson. The district court explained that it was "required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact." In its ruling, the district court noted that there were no allegations in the amended complaint against many of the named defendants, and that "[a] plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior." Further, the district court explained that: (1) as to Clark's claim of violation of due process for deprivation of personal property, there was no indication that Clark suffered an unconstitutional taking, and, even if there was, Clark failed

to plead and prove that state remedies for redressing the wrong were inadequate; (2) as to Clark's claim of violation of due process for segregation, Clark failed to assert the existence of a constitutionally cognizable liberty or property interest with which the state had interfered; (3) as to Clark's equal protection claim, there was no suggestion that other inmates were permitted to possess property in excess of the 2.4 policy limitation, nor that the officers purposefully intended to discriminate against Clark because of his membership in a suspect class; (4) as to Clark's Eighth Amendment claim, there were no facts alleged to suggest that an officer challenging Clark to a physical altercation presented the type of extreme and serious deprivation required for this type of claim; (5) as to Clark's claim of denial of access to courts, Clark failed to demonstrate that he suffered any actual injury; and (6) as to Clark's retaliation claims regarding the deprivation of his personal property, Clark failed to show that the adverse actions taken against him were motivated by the grievances he filed. These claims were dismissed, leaving only Clark's retaliation claim against James and Johnson—in regard to placing him in segregation after speaking with an ODRC official—for the district court to consider.

Shortly thereafter, Clark moved to alter or amend this § 1915(e) judgment against him, and the motion was referred to Magistrate Judge George J. Limbert for review. In the meantime, the court issued an entry of default against the defendants pursuant to Federal Rule of Civil Procedure 55(a) because they had failed to file any pleadings in their defense, and Clark later moved for a default judgment. However, the defendants sought to set aside this entry of default and opposed the motion for default judgment because they alleged that they had both promptly submitted requests,

per ODRC procedure, for Attorney General representation and were unaware that, due to an ODRC oversight, this representation had not been provided. Because the defendants did not act willfully or intentionally in delaying the proceedings, Clark was not prejudiced by the delay, and the defendants had a number of potentially meritorious defenses, the district court granted the defendants' motion to set aside the entry of default and denied Clark's motion for default judgment. Defendants then moved for a protective order staying discovery until the issue of qualified immunity, which the defendants had asserted, was resolved. The district court also granted this motion, and ruled that "[o]nce the Court has issued its [order on the motion to alter or amend the § 1915(e) order], this case will proceed in a bifurcated basis, with the issue of immunity addressed first."

In January 2008, the magistrate judge submitted his Interim Report and Recommendation in regard to Clark's motion to alter or amend the § 1915(e) judgment. The magistrate judge recommended that the court grant Clark's motion insofar as it related to his claim of denial of access to courts because of the alleged seizure of his legal materials, but deny all of the remaining grounds for relief. In his recommendation regarding the denial-of-access-to-courts claim, the magistrate judge explained:

> Plaintiff claims that he was unable to plead the non-frivolous nature of his claims because he is unable to remember the basis of his claims without access to the legal materials that he alleges the prison officials seized. Plaintiff further claims that he intends to file a Rule 26(B) Application for Reopening of Appeal and a federal habeas corpus petition. Lastly, Plaintiff contends that he can show good cause as to why he did not file a 26(B) motion within 90 days, as the Rule requires, and he contends that he is able to make a strong showing of actual innocence that would permit him to file a petition for habeas corpus that would otherwise be barred.

(Citations omitted.) Though the magistrate judge "agree[d] with Judge Lioi's application of the law and [found] no clear error," he urged the trial judge to use her discretion under Federal Rule of Civil Procedure 59(e) to grant this motion to alter or amend. Judge Limbert encouraged the district court to take this action "because Plaintiff's assertion that he was impeded from sufficiently pleading the non-frivolous nature of his potential suits is not the type of assertion that is typically expected under the notice-pleading requirement," and because "Plaintiff's shortcoming does not prejudice Defendants because, assuming his allegations are true, he was incapable of pleading the factual basis of his claim due to the Defendants' actions." However, the district court rejected the magistrate judge's recommendation in regard to the denial-of-access-to-courts claim, stating, "The Court adheres to its original conclusion that Plaintiff has failed to show actual injury as a result of the conduct of any defendants." The district court adopted the remainder of the magistrate judge's recommendation, and denied Clark's motion to alter or amend the judgment.

Clark moved for summary judgment on the issue of qualified immunity in June 2008. In his motion, Clark argued that he was engaged in constitutionally protected conduct when defendants took adverse actions against him, that these adverse actions were motived by this constitutionally protected conduct, and that defendants would not have taken these actions had the protected conduct not occurred. Further, Clark claimed that "by failing to respond in the time [allotted] pursuant to Fed. R. Civ. P. 36(a), to plaintiff's requests for admissions, defendants admit [all of the allegations in the motion]." In response, defendants moved for summary judgment on the issue of qualified immunity. Defendants first argued that no constitutionally protected right had been violated because

no inmate has a federally protected right to be free from false conduct reports, to file personal-property-loss claims in state court, or to dictate how a state prison department will conduct its business. Defendants also argued, in the alternative, that no clearly established constitutionally protected right existed, as "[n]o reasonable prison official would have known by May 12, 2005, that any alleged act or omission set forth in this action would impinge on a federally protected right." Defendants also filed a response to Clark's motion for summary judgment, which incorporated the arguments from their own motion. In addition, the defendants' response alleged that Clark's claim that defendants failed to timely answer his request for admissions was incorrect because the court stayed discovery unless related to the issue of qualified immunity. In response to defendants' arguments, Clark clarified that he was not arguing that he had a federally protected right to be free from false conduct reports or to file personal-property claims. Instead, Clark stated that he was simply arguing that the filing of a false report in this case constituted retaliation, and that once inmates are allowed to file state property claims and/or complaints and grievances, it is unconstitutional to retaliate against them for doing so. In addition, Clark argued that he was not trying to dictate how to conduct prison business when speaking with the ODRC official, but, instead, that he was merely responding to the official's inquiry regarding the conditions at the prison.

The magistrate judge, in his second Interim Report and Recommendation, suggested that the district court deny Clark's motion, grant defendants' motion in part, and deny defendants' motion in part. In particular, the magistrate judge recommended that the district court grant defendants' motion for summary judgment on qualified immunity "insofar as it relates to alleged acts taken in

retaliation for Plaintiff's pursuit of: an informal grievance that he voiced to [ODRC] chief legal counsel during his tour of OSP; appeals from his criminal conviction; or other grievances upon which Plaintiff was attempting to exhaust his administrative remedies," and "insofar as it relates to [Clark's] participation in a federal class action suit against OSP . . . and Defendant Johnson's alleged participation in a false conduct report dated June 2, 2005." However, the magistrate judge recommended that the district court deny defendants' motion "insofar as it relates to [Clark's] participation in a federal class action suit against OSP . . . and Defendant James' alleged participation in a false conduct report dated May 12, 2005; Defendant Johnson's alleged participation in a false conduct report dated May 5, 2005; and Defendant James['] alleged participation in a false conduct report dated June 2, 2005." This recommendation hinged largely on defendants' failure to file a timely response to Clark's requests for admissions, which led the magistrate judge to deem those allegations admitted pursuant to Federal Rule of Civil Procedure 36. Accordingly, the magistrate judge found that "the body of evidence available for ruling upon the instant motion for summary judgment includes Plaintiff's Declaration, his requests for admissions, . . . and the conduct reports from May 5, 2005, May 12, 2005, and June 2, 2005, which Defendants explicitly admit are authentic."

After the magistrate judge issued his recommendation, the defendants moved for leave to withdraw and amend their responses to the request for admissions pursuant to Federal Rule of Civil

Procedure 36(b).[2] Defendants first argued that Clark's request for admissions exceeded the scope of discovery, and, thus, no answers were needed and no requests should have been deemed admitted. Alternatively, defendants claimed that the court should permit any untimely responses to be withdrawn and amended as the disputed admissions negated the defense of qualified immunity on factual grounds, precluding the case from being heard on the merits, and Clark would not be injured in his ability to develop his case or dispute defendants' legal arguments if these admissions were withdrawn. In response to this motion, Clark noted that the magistrate judge found defendants' argument that Clark's request exceeded the scope of discovery to be without merit. In addition, Clark argued that the district court has broad discretion in determining whether to grant leave to withdraw and amend admissions under Rule 36(b), and that it should not exercise that discretion in this case because defendants purposefully chose not to respond to this request in reliance on a spurious legal theory. Finally, Clark contended that defendants failed to identify "which of [their] admissions that they wish to withdraw or amend and how it would subserve the merits," and that Clark would be prejudiced by the granting of this motion as it would require the re-opening of

---

[2]This provisions states,

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal and amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

discovery on the issue of qualified immunity, amendment of the motions for summary judgment, and

sanctions against the defendants for delay.

In December 2008, the district court issued a Memorandum Opinion and Order granting

defendants' motion for leave to withdraw their response to the request for admissions, and granting

defendants' motion for summary judgment on the issue of qualified immunity. In regard to the

motion for leave to withdraw, the district court framed the defendants' request as follows:

> [Defendants] argue that the requests went beyond the permissible scope of discovery
> on qualified immunity. They seek leave to withdraw the May 7th responses or, in the
> alternative, for an order that, even if the deemed admissions are not withdrawn, they
> are not relevant to the issue of qualified immunity and, therefore, have no bearing on
> the analysis for the motions for summary judgment.

The district court explained that it had "considerable discretion" in deciding whether to grant this

motion, but that it saw "no connection to the issue of qualified immunity" when reviewing the

various requests for admissions. Accordingly, the court felt that "[t]hese requests go to the merits

of the underlying claims, matters which are not yet before the court," and reasoned that "[a]lthough,

strictly speaking, defendants probably should have responded by making timely objections, the fact

is, these discovery requests should not have been made because discovery was stayed as to the

merits." The district court also found that there would be no prejudice to Clark in granting this

motion, as Clark had not shown the kind of "special difficulties" required for a showing of prejudice.

Regarding defendants' motion for summary judgment, the district court stressed its previous

§ 1915(e) ruling, which construed Clarks' complaint as "alleging a two-pronged retaliation claim:

pertaining to plaintiff's personal property dispute and pertaining to his placement in segregation."

The district court explained,

> Although the complaint makes mention of the fact that plaintiff was a party to the federal class action law suit, it never alleges that Johnson and James, the only remaining defendants, had any knowledge of his participation in that litigation *and*, more importantly, the complaint never alleges any nexus between the defendants' adverse behavior (i.e., the alleged false conduct reports) and his participation in prior litigation. Plainly put, the complaint does not allege that the three allegedly false conduct reports were motivated by retaliation for plaintiff's participation in the now-closed federal class action lawsuit.

Instead, according to the district court, Clark alleged that the May 12, 2005 conduct report was motivated by Clark's complaints to the ODRC official, Clark implied that the May 5, 2005 conduct report, if anything, was motivated by these same complaints, and Clark failed to assert that the June 5, 2005 conduct report was done in retaliation for participating in the class action suit. Finally, the district court appeared to imply that summary judgment would be appropriate even if it had not granted defendants' motion to withdraw their responses to admissions, when noting that "even if there were an outright admission that James entrapped Plaintiff into a disciplinary violation, there is nothing to establish that it was done in retaliation for participating in a class action lawsuit." Clark now appeals these rulings.

## II.

As a preliminary matter, Clark alleges that the district court should have considered both his original and amended complaints in making its rulings, but Clark did not clearly incorporate the former with his filing of the latter. When a pleading is amended pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original pleading, i.e., "the original pleading

no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading," 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2010) (footnote omitted); *see also Parks v. Fed. Express Corp.*, 1 F. App'x 273, 277 (6th Cir. 2001). If, however, the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading. *See* Wright & Miller, *supra*; *see also Anson v. Corr. Corp. of Am.*, No. 4:06-CV-1672, 2007 WL 1467058, at *1 n.2 (N.D. Ohio May 16, 2007). Clark did not clearly indicate that he intended his amended pleading to supplement, rather than supersede, his original pleading. Accordingly, it was appropriate for the district court to rely solely on the amended pleading in making its rulings. However, even if the district court erred in this regard, the error would not affect the outcome of this case as Clark's original complaint does not provide any additional information sufficient to cure the deficiencies in Clark's claims.

**III.**

Because Clark failed to establish that the underlying claim he was allegedly retaliated for had any merit—one of the elements required to prove a First Amendment retaliation claim—no constitutional violation occurred. The district court was therefore warranted in finding defendants immune from suit and, thus, in granting summary judgment on this issue in their favor. Clark alleges that defendants are not entitled to qualified immunity because they violated his First Amendment rights when they retaliated against him after he complained to an ODRC official visiting the prison

about the general conditions of the prison.[3]  In order to demonstrate a First Amendment retaliation

claim, Clark needed to prove among other things that he engaged in protected conduct in the first

place.  *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175

F.3d 378, 393 (6th Cir. 1999) (en banc)).

Clark failed to show that he was engaged in protected conduct when the defendants allegedly

retaliated against him.  Although "[a]n inmate has an undisputed First Amendment right to file

grievances against prison officials on his own behalf, . . . [t]his right is protected . . . only if the

grievances are not frivolous."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  In other

words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for

purposes of a retaliation claim, but "only to the extent that the underlying claims ha[ve] merit."  *Id.*

Summary judgment was proper for Clark's retaliation claim based on the complaints he made

about OSP officials to an ODRC official because there was no basis shown for the underlying

complaint.  Though Clark continually asserts that he complained to the ODRC official in an attempt

to gain access to his legal property, and, by doing so, gain access to the courts, he fails to present any

evidence regarding the legitimacy of his complaints regarding his legal property or regarding his

denial of access to courts.  In his amended complaint, Clark alleges only that he "was speaking to

---

[3]The district court's qualified immunity ruling was limited to this particular retaliation claim only.  Clark's other retaliation claims—regarding Clark's participation in a class action lawsuit and his filing of complaints and grievances against OSP staff—were dismissed pursuant to § 1915(e) and, thus, were not properly before the district court on motion for summary judgment.  The district court did, however, discuss Clark's claim of retaliation for his involvement in a class action suit and for filing other complaints and grievances in its Memorandum Opinion and Order in order to respond to the magistrate judge's incorporation of these claims in his Interim Report and Recommendation.

the chief legal counsel for the [ODRC] about [his] confiscated legal property when the UMA (Unit

Management Administrator) interjected himself in the conversation, he didn't like [Clark's]

complaints about [the UMA's] job performance, so [the UMA] had [Clark] put in the hole for no

reason." Further, when moving for summary judgment, Clark merely stated,

> Then when defendant James was telling [the ODRC official] that he and other staff
> had been trying to help plaintiff with his property issue and plaintiff pointed out to
> [the ODRC official] that defendant James hadn't even answered the complaint on the
> issue that he had instructed plaintiff to send, James ordered plaintiff to go to his cell
> for no reason (even though plaintiff hadn't eaten lunch yet).

Neither filing demonstrates that Clark's complaints about the defendants' job performance were

legitimate, nor that his complaints about the defendants failing to answer his previous grievances

were not frivolous. Thus, Clark failed to show that he was engaged in protected conduct when the

defendants acted adversely against him. Without such a showing, Clark cannot make out a

constitutional violation, and defendants are entitled to qualified immunity on this retaliation claim.

Clark relies on *Siggers-El v. Barlow* to support his argument for reversal, but that case is

distinguishable. *Siggers-El* involved an inmate's suit against a prison official for allegedly

transferring the inmate in retaliation for the inmate's complaining to the official's supervisors that

the official had not authorized disbursements from the prisoner's account to pay his lawyer. 412

F.3d at 696. The defendant in *Siggers-El* moved for summary judgment on the basis of qualified

immunity and the district court denied this motion. *Id.* On appeal, this court upheld the district

court's denial despite the defendant's arguments that Siggers-El failed to demonstrate that he was

engaged in protected conduct or that he suffered an adverse action. *Id.* at 699-702. In particular, the

defendant argued "that although a prisoner has a right to file non-frivolous lawsuits and grievances, a prisoner may not, as the Plaintiff did, orally complain to an officer's superior regarding the officer's conduct," because that "is 'inconsistent with [plaintiff's] status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* at 699 (alteration in original). However, this court did not accept that the defendant accurately characterized Siggers-El's conduct, as the conduct was not merely going over defendant's head, but rather was "part of [Siggers-El's] attempt to access the courts," which prisoners have a constitutional right to do. *Id.* Moreover, we explained that the record did not support the defendant's contention that Siggers-El's actions conflicted with legitimate penological objectives, as the defendant admitted that Siggers-El did nothing wrong and the defendant's supervisors legitimated Siggers-El's complaints by responding to them. *Id.* at 700-01.

Siggers-El did not suffer from the same deficiency in his argument as Clark does in this case because the prison supervisors, and even the defendant himself, legitimated Siggers-El's informal complaints. The problem with Clark's case is not that his complaint was informally made, but that it has not been shown to have had any merit. However, unlike the district court in Clark's case, the district court in Siggers-El's case did not address the merits of his complaint, and the defendant did not contest that on appeal. Because Clark did not establish any constitutional violation, the district court correctly granted summary judgment in favor of defendants.[4]

---

[4]In reaching this decision, we do not rely on the warden's argument that "Clark's conduct was improper because it was not consistent with his status as an inmate and not consistent with legitimate penological objectives."

**IV.**

Clark's remaining claims were dismissed early in the proceedings for failure to state a claim. Unlike the retaliation claim discussed above, these dismissals were pursuant to 28 U.S.C. § 1915(e) and can only be upheld if the claim is not even plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under that standard, Clark adequately pleaded a First Amendment retaliation claim against the defendants based on his participation in a class action lawsuit, but he did not adequately plead a denial-of-access-to-courts claim or an equal-protection claim. This court reviews de novo the district court's dismissal of a complaint pursuant to § 1915(e). *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Moreover, in reviewing Clark's pleadings, this court must also keep in mind the relaxed standards when reviewing pleadings filed by pro se litigants; specifically, this court "may not uphold the dismissal of such a pleading 'simply because [we] find[] the plaintiff's allegations unlikely'" *Id.* (alteration in original) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

A.

Clark adequately pleaded a First Amendment retaliation claim against the defendants based on his participation in a class action lawsuit and the filing of other complaints and grievances, which allegedly led to the confiscation of his personal and legal property.[5] "To state a claim alleging

---

[5]The district court differentiated between Clark's retaliation claims based on the adverse actions taken—confiscation of Clark's personal and legal property, and Clark's placement in segregation. However, this opinion differentiates between Clark's retaliation claims based on the protected conduct alleged—Clark's participation in a class action lawsuit and his filing of other complaints and grievances, and Clark's complaint to an ODRC official. For clarification, the

- 16 -

retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) that defendant took an adverse action against him . . .; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Id.* at 440 (citing *Thaddeus-X*, 175 F.3d at 394). Clark clearly pleaded the first element. We have already noted that the filing of grievances against OSP officials constitutes protected conduct as long as the grievance is not frivolous, and there is no duty to plead that a grievance is not frivolous in order to survive dismissal at the pleading stage. *See id.*

As for the second element, "[i]n order to determine whether actions of lesser severity [than administrative segregation] merit being deemed 'adverse' for purposes of a retaliation claim," this court must ask whether the "adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "[W]hile certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.* at 398. In *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), this court found that evidence showing that defendants left plaintiff's cell in disarray, confiscated his legal papers without returning them, and stole his medical diet snacks was sufficient to meet

---

retaliation claim regarding Clark's participation in a class action lawsuit and his filing of other complaints and grievances also alleges that his personal and legal property were confiscated because of these actions. Meanwhile, the retaliation claim regarding Clark's complaint to an ODRC official also alleges that he was placed in segregation because of his actions.

- 17 -

plaintiff's burden under the adverse action prong of the retaliation claim. *Id.* at 605. Further, this court acknowledged that "a number of cases from other circuits have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim,"[6] *id.* at 604, and that "we have previously suggested in dicta that a retaliatory cell search and seizure of an inmate's legal documents satisfies the adverse action prong of the *Thaddeus-X* test," *id.* (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Though *Bell* involved the district court's grant of judgment as a matter of law against a prisoner-plaintiff claiming he was retaliated against, its analysis is instructive in demonstrating what can constitute an adverse action. Because deprivation of personal and legal property can be considered an adverse action, Clark adequately pleaded facts and allegations sufficient to establish the second element of this retaliation claim.

---

[6]In making this reference to other circuits, *Bell* cited the following cases:

> *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996) (reversing grant of summary judgment to defendants on inmate's claim that guards conducted harassing cell searches, seized legal materials, refused to provide inmate with hygiene items, and transferred inmate to segregation in retaliation for suit against prison officials); *Green v. Johnson*, 977 F.2d 1383, 1389-91 (10th Cir. 1992) (holding that inmate's allegation that guards destroyed his legal materials in retaliation for his filing of suits and grievances stated a cognizable First Amendment claim); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (same); *Hall v. Sutton*, 755 F.2d 786, 787-88 (11th Cir. 1985) (holding that inmate alleged sufficient facts to state a claim of First Amendment retaliation based upon the alleged confiscation of his tennis shoes in retaliation for a prior lawsuit against prison officials).

*Bell*, 308 F.3d at 604.

As for the third element, "[b]ecause the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." *Thomas*, 481 F.3d at 441. It cannot be said that Clark has failed to state any claim for retaliation upon which relief may be granted, especially when considering the less stringent pleading requirements for pro se litigants. In his complaint, Clark alleges that his constitutional rights were violated "both for [his] participation and testimony in federal court in a class action against OSP, and for [his] complaints against some of them individually." Clark further claims that the "2.4 cubic feet and pack-up procedures" were inadequate, and that application of them to him violated his First Amendment rights "because these adverse actions were taken against [him] for exercising [his] rights to access the courts and filing complaints and grievances." According to these allegations, Clark might be able to put forth evidence connecting these officers' actions to Clark's involvement in a class action lawsuit, entitling Clark to relief for retaliation. Even if it is unlikely that Clark will prove these facts, that does not make dismissal appropriate. *See id.* at 437. Thus, Clark adequately pleaded retaliation, through the confiscation of his property, for his involvement in a class action lawsuit and his filing of other complaints and grievances.[7]

## B.

Because Clark did not adequately plead a denial-of-access-to-courts claim, the district court was correct in dismissing this claim pursuant to § 1915(e). Though prisoners do have a

---

[7]This does not mean that Clark would survive a motion for summary judgment by defendants on this claim, but the district court did not rule upon this particular retaliation claim at the summary judgment stage.

constitutional right to meaningful access to the courts, which is grounded in many sources, in order to adequately state a claim for a denial of access to courts, a prisoner must set forth actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996). In addition, *Lewis* requires that the prisoner demonstrate that the underlying claim allegedly prejudiced is not frivolous. *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (noting that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation"). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Clark failed to adequately plead any specific prejudice to a non-frivolous claim that he suffered because of the defendants' alleged denial of access to courts. In his amended complaint, Clark asserted only that "the confiscation of [his] legal work ha[d] prevented [him] from filing suit for previous acts . . . and ha[d] prevented [him] from [fighting] [his] criminal case for the past two years." Clark did not note any specific claims that he intended to file or any specific appeals to his criminal case that he intended to allege. Accordingly, he also failed to describe his underlying claims or to assert their non-frivolity. Moreover, Clark did not even allege any actual injury because of this denial of access to the courts in his original complaint—that is, reading the two complaints together

has no impact on this dismissal.[8]  Clark relies upon clarifications he made within his motion to alter

or amend the district court's § 1915(e) ruling to support his contention that he really did plead actual

injury.[9]  This information was not submitted, however, until after the district court entered its

judgment dismissing Clark's complaint.  Moreover, even these additional facts introduced by Clark

in his motion to alter or amend fail to demonstrate the non-frivolity of the underlying claims he

---

[8]In his original complaint, Clark merely states, "The taking of my legal property has caused me to not be able to fight my criminal conviction for the past two years, prevented me from being able to [pursue] other civil rights violations, and prevented [me] from fully participating in my current action (*Austin v. Williams*)."

[9]In regard to his access-to-courts claim, Clark's motion to alter or amend stated as follows:

 I do not believe though I am required to present and prove all of the grounds I would have raised in [my proposed actions] in my complaint.  I couldn't do that anyway without the court granting my preliminary injunction request to access my legal materials, because that's the point, I can't even remember some of my grounds without my confiscated property.  But I can relate some of them and the actions in which I [planned] to raise them.  There were civil rights actions for the Warden and a Unit Manager manipulating my security and level reviews in retaliation for comments I made about the Warden on the stand and for testifying in general in *Austin v. Wilkinson*.  There was another civil rights action for Sgt. Johnston ordering other officers to write conduct reports on me when it's really just her wanting to be the hearing officer on her own conduct reports in retaliation for me filing complaints and grievances against her.
      As for my criminal case I [planned] to file a 26(b) Application for reopening my appeal due to ineffective assistance of appellate counsel.  And I could show good cause why it wasn't filed in 90 days.  Keep in mind that, among other things, I was only 15 when I was tried as an adult, and I was uneducated and indigent.  I was also working on my federal Habeas Corpus for which I can make a strong showing of actual innocence which allows a district court to hear grounds which would otherwise be barred.

explains or to describe how the confiscation of his legal property affected his ability to pursue these actions.

The district court's dismissal of Clark's denial-of-access-to-courts claim was appropriate, even when reviewing it in the context of the relaxed pleading requirements afforded to pro se litigants. In *Marshall v. Knight*, the Seventh Circuit explained that "[t]he requirement that prisoners making access-to-courts claims allege specific prejudice should not be understood as an onerous fact-pleading burden," 445 F.3d 965, 968 (7th Cir. 2006), but the district court did not require such "onerous fact-pleading" in this case. Moreover, *Marshall* also acknowledges that "notice pleading requires plaintiffs to 'make specific allegations as to the prejudice suffered because of the defendants' alleged conduct.'" *Id.* (quoting *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003)). Though the pleading standard for pro se litigants is liberal, it is not without its limits, and does not "abrogate basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing, among other cases, *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983), for the proposition that the "duty to be less stringent with pro se complaint does not require court to conjure up [unpleaded] allegations"). Examining the facts and allegations as presented by Clark, the district court had a basis for determining that it was unable to even infer a denial-of-access-to-courts claim. Thus, the district court did not err in dismissing this claim.

Clark also challenges the district court's failure to address his additional access-to-courts claim, which is based on his contention that the 2.4 pack-up policy itself has a chilling effect on prisoner litigation, but Clark also failed to adequately plead this claim. Regarding this claim, Clark's

amended complaint stated only that "the defendant's legal policy also violates access and Equal protection as it restricts those inmates who engage in litigation to only being allowed to [possess] half the [amount] of personal [property] of those who [don't] and appears to have been specifically designed to have a chilling effect on inmate litigation."[10] Clark failed to plead any actual injury in relation to this additional denial-of-access-to-courts claim.[11] Accordingly, Clark failed to establish any constitutional violation in regard to the pack-up policy itself.

C.

Clark did not adequately plead an equal-protection violation under a "class of one" theory.[12] Clark's amended complaint fails to claim that he was intentionally treated differently than other similarly situated prisoners. In order to bring a successful claim under a "class of one" theory, one

---

[10]Clark's original complaint did not even mention this additional access-to-courts claim.

[11]Clark cites *Turner v. Safley*, 482 U.S. 78 (1987), to support this additional access-to-courts claim. Clark does so in reliance on the *Turner* factors, which assist in determining whether a prison regulation is reasonably related to legitimate penological interests. This court need not even reach that inquiry, however, as it is only relevant once we have determined that a prison regulation actually impinges on inmates' constitutional rights, *see id.* at 89, and Clark failed to plead any actual injury from the enforcement of this policy.

[12]In addition to arguing that Clark failed to state a valid "class of one" equal-protection claim, the defendants challenge the application of the "class of one" theory in the prison litigation setting, because "[t]he enforcement of prison procedural rules by their very nature involves discretionary decision-making based on a vast array of subjective, individualized assessments," and because "recognition of a 'class of one' theory in the prison context would subject nearly all prison officials' decisions to constitutional review in federal court." The defendants rely on *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008) (refusing to apply the "class of one" theory in the public employment context), in making this argument, but this court need not address this larger issue because Clark does not even fulfill the requirements of pleading a "class of one" claim.

must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The equal-protection claim in Clark's amended complaint states only that his "Equal Protection rights were violated because these policies were enforced against [him] selectively." Moreover, Clark's original complaint does not even allege any equal protection claims in its listing of "Causes of Action," nor does it state any facts that could be used to infer an allegation that similarly situated prisoners were treated more favorably than Clark in regard to pack-up procedures. Without at least a suggestion that other inmates at OSP were permitted to possess property in excess of the policy's limit or that OSP officials enforced the property limitations with the purposeful intent of discriminating against Clark, Clark cannot make out a "class of one" equal-protection claim.

## V.

The district court's discretionary rulings against Clark throughout this case did not constitute an abuse of discretion. Because "[m]atters of docket control and conduct of discovery are committed to the sound discretion of the district court," this court "will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982)).

Clark first alleges that "the district court erred in allowing Defendants to withdraw their responses and in failing to consider the admitted facts on summary judgment," but the district court

did not abuse its discretion in permitting this withdrawal. Federal Rule of Civil Procedure 36(b) permits "withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). "The first prong of the test articulated in Rule 36(b) is satisfied 'when upholding the admission would practically eliminate any presentation on the merits of the case.'" *Riley v. Kurtz*, 194 F.3d 1313, 1999 WL 801560, at *3 (6th Cir. 1999) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). The defendants' admissions certainly could have affected the merits of the underlying claims, as without withdrawal, defendants would have had a difficult time establishing their defense to Clark's claims for retaliation. As far as the second prong of the test, "'the prejudice contemplated . . . is not simply that the party who initially obtained the admission will now have to convince the factfinder of its truth,' . . . [but] rather, 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 154 (6th Cir. 1997) (citations omitted). Clark was not prejudiced by the withdrawal of the defendants' responses. He had plenty of time during the discovery process to introduce other evidence that would be proper for the court to consider in regard to the issue of qualified immunity, but he failed to do so. Further, if his claim had survived summary judgment, he would have had

additional time for discovery on the underlying merits of his claim. Therefore, the district court did not abuse its discretion in granting defendants' motion for withdrawal.[13]

Finally, the district court did not abuse its discretion in ruling on additional pre-trial discretionary matters. Clark asserts that the district court abused its discretion in setting aside defendants' default, granting defendants' requests for extensions of time and denying similar motions by Clark, and denying Clark's motion to file an amended complaint after defendants filed a second answer alleging, for the first time, a statute of limitations defense. In regard to the setting aside of defendants' default, the federal courts have a strong preference for trials on the merits, *Shepard Claims Serv. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986), and a district court properly considers three factors in determining whether to set aside an entry of default: 1) "[w]hether the plaintiff will be prejudiced;" 2) "[w]hether the defendant has a meritorious defense;" and 3) "[w]hether culpable conduct of the defendant led to the default." *Id.* at 192. Though Clark challenges the district court's findings as to the third element, "[w]here the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Id.* at 195. Thus, the district court

---

[13]Clark argues that the admissions pertained to qualified immunity and thus were not outside the district court's limitation on discovery. However, because the district court did not abuse its discretion in allowing defendants to withdraw their response to Clark's request for admissions, we need not determine whether Clark's requests fell within the scope of discovery. Still, we recognize that it is often difficult to distinguish the issues relevant for purposes of a qualified-immunity analysis from those relevant to the underlying merits of the case.

did not abuse its discretion in accepting the defendants' entirely credible explanation for their delay in responding to Clark's complaint. As for the denial of Clark's requests for extension of time and his motion to file an amended complaint, Clark has not shown that the district court acted outside of its "broad discretion in matters of pretrial management, scheduling and docket control." *Kimble v. Hoso*, 439 F.3d 331, 336 (6th Cir. 2006). Accordingly, the district court did not abuse its discretion in making these rulings.

## VI.

For these reasons, we AFFIRM the district court's grant of summary judgment in favor of defendants in regard to Clark's claim of retaliation based on his complaints to an ODRC official visiting the prison (and allegedly causing him to be placed in segregation), and we AFFIRM the district court's dismissal of Clark's denial-of-access-to-courts and equal-protection claims. However, we REVERSE the district court's dismissal of Clark's other claim of retaliation based on his participation in a class action lawsuit and filing of other complaints and grievances (and allegedly leading to the confiscation of his personal and legal property) and REMAND for further proceedings consistent with this opinion.