NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0452n.06

Case No. 16-3932

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 01, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| MORTGAGE ELECTRONIC | ) | OHIO |
| REGISTRATION SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

BEFORE: GIBBONS, ROGERS, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** When Eugene Kline twice defaulted on loans secured by two mortgages on his home, the holders of these loans brought foreclosure actions against him. After paying off his debts, Kline and co-plaintiffs brought a putative class action suit against various entities involved with the foreclosure actions, alleging that these entities charged them improper fees in connection with the foreclosures. For the reasons discussed below, we **AFFIRM** the district court's judgment in all respects.

A.

In 2004, Kline entered into two loan transactions with WMC Mortgage Corporation ("WMC"): (1) a promissory note for $160,000 secured by a mortgage on his home, and (2) a promissory note for $30,000 secured by a second mortgage on his home. WMC assigned Kline's

loans to Merrill Lynch Mortgage Investors, Inc., which deposited the notes into trusts of residential mortgage-backed securities (collectively, "the Trust").

In 2005, after Kline fell behind on payments, the Reimer Firm filed a foreclosure action against Kline that identified the plaintiff as "Mortgage Electronic Registration Systems, Inc., [("MERS")] c/o HomEq Servicing Corporation." Summ. J. Decision, ECF No. 492, Page ID 8864. Shortly thereafter, Wachovia Bank, N.A., sold HomEq, the loan servicer, to Barclays Capital Real Estate, Inc., which then assumed the servicing of Kline's loans. Kline was able to cure the default, and in 2007, he brought suit against HomEq and Reimer alleging that they illegally and improperly charged him certain fees. The court dismissed the case as untimely.

In 2007, after Kline defaulted on his loans again, Reimer again filed a foreclosure action, this time identifying the plaintiff as "Wells Fargo, N.A. as Trustee c/o HomEq Servicing Corporation." *Id.* at 8865. Ten days later, MERS assigned the loans to Wells Fargo. The Lerner Firm filed an answer on behalf of MERS asserting an interest in the Balloon Note secured by the second mortgage. Reimer sent Kenneth Wegner, Kline's attorney, a letter stating the payoff and reinstatement quotes for both mortgages. Two months later, Wegner sent letters to Reimer and Lerner requesting a payoff amount. Both firms responded with estimates. Wegner then sent letters to both firms requesting a more detailed itemization of the fees. Both firms responded with itemized costs, including those incurred during the litigation. Kline sold his home and paid off both loans in November 2007.

On November 10, 2008, Kline and co-plaintiffs[1] filed a putative class action suit against Defendants, many of whom are no longer parties to this litigation, arising out of the fees and costs Defendants charged them when they paid off their loans. Kline filed an amended complaint on April 14, 2010, alleging that (1) Reimer, Lerner, and MERS violated the Fair Debt

---

[1] Kline remains the only plaintiff in this suit.

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f; (2) MERS, Barclays, Wells Fargo,[2] and WMC violated the Truth in Lending Act ("TILA"); (3) all Defendants violated section 1345.01 of the Ohio Consumer Sales Practices Act, ("OCSPA"); (4) all Defendants were unjustly enriched in violation of Ohio law; and (5) all Defendants breached a contract in violation of Ohio law. We resolve only those claims preserved for appellate review.

On March 27, 2015, Reimer, Lerner, Wells Fargo, Barclays, and MERS moved for summary judgment. On April 10, 2015, while the time for Kline to respond was pending, Kline faxed to the court a letter requesting a status conference and asserting a right to additional discovery before he responded to Defendants' summary judgment motions, reasoning that recent discovery responses had uncovered issues that necessitated additional discovery. However, this letter was not filed with the Clerk, and no certificate of service was filed with it to indicate that it was served on Defendants. On May 7, 2015, Kline filed a letter with the court making substantially the same claims. While Kline was sending letters to the court, the deadline to respond to Defendants' motions for summary judgment apparently came and went without response from Kline, so Defendants requested via email that the court grant their motions based on Kline's failure to timely respond. The district court denied Defendants' request, allowing Kline additional time to respond. After Kline filed memoranda in opposition to the motions, on December 23, 2015, the district court granted Defendants' motions for summary judgment.

Kline was required to file a motion for class certification by June 9, 2015, but again missed the deadline. Accordingly, Defendants filed a joint motion to strike and dismiss Kline's class allegations for failure to file a class certification brief. Kline responded, insisting that his April 10, 2015 and May 7, 2015 letters constituted requests for extensions. In a decision dated September 25, 2015, the district court construed these letters as requests to reopen discovery and

---

[2] MERS, Barclays, and Wells Fargo will be referred to collectively as "Corporate Defendants."

denied the requests, concluding that Kline failed to justify additional discovery. Then, it granted Defendants' motion to strike, concluding that Kline disregarded the district court's admonitions regarding the deadline to file the class certification motion and that there was not good cause for the delay.

Next, on December 21, 2015, Kline moved for leave to file a second amended complaint, seeking to add RICO and fraud claims based on "new evidence" that Defendants made misrepresentations during the foreclosure actions and during the instant litigation. On December 23, 2015, the district court, observing that Kline alleged facts to support these additional claims in his original complaint, denied Kline's motion, citing undue delay and futility of amendment as reasons.

Finally, on January 20, 2016, and January 28, 2016, respectively, Kline moved for reconsideration of the district court's rulings on Defendants' motions for summary judgment and Kline's motion to amend and moved for relief from the district court's orders granting summary judgment to Defendants, denying his motion to amend, and striking class allegations from the complaint. On July 18, 2016, the district court denied Kline's post-judgment motions. On August 12, 2016, Kline filed a timely notice of appeal.

B.

As an initial matter, Defendants contend that Kline's notice of appeal is insufficient to confer jurisdiction over all of the claims Kline raises in his briefs on appeal. Kline's notice of appeal stated that he appealed:

> from the Order dated July 18, 2016, denying Plaintiff's Motion for Reconsideration of the District Court's Orders (i) dated September 25, 2015 striking the class allegations from the Complaint; (ii) dated December 23, 2015, granting Defendants' motions for summary judgement; and (iii) dated December 23, 2015, denying plaintiff's motion to file an amended complaint.

Notice of Appeal 1, ECF No. 514, Page ID 9401. He attached to the notice the district court's July 18 order. One could construe this to mean that Kline sought to appeal only the motion for reconsideration of the three enumerated orders, rather than the underlying decisions and the motion for relief from judgment, which is the interpretation Defendants urge the court to adopt.

This court "has jurisdiction only over the areas of a judgment specified in the notice of appeal as being appealed," but the notice of appeal should be given liberal construction. *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) (citing *Smith v. Barry*, 502 U.S. 244, 248 (1992)). "[A] notice of appeal that names only a post-judgment decision may extend to the judgment itself if it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal from the final judgment and it also appears that the appellee has not been misled." *United States v. Grenier*, 513 F.3d 632, 635 (6th Cir. 2008) (quoting *Harris v. United States* 170 F.3d 607, 608 (6th Cir. 1999)). This intent may be inferred from briefs and other filings. *Id.* Kline's initial brief on appeal makes clear that he challenges (1) the district court's entry of summary judgment in Defendants' favor; (2) the district court's denial of Kline's Rule 60 motion for relief from judgment;[3] (3) the district court's decision to strike Kline's class allegations; and (4) the court's denial of Kline's motion to amend his complaint. This was more than sufficient to place Defendants on notice of the district court decisions at issue, *see id.*, as indicated by the fact that Defendants respond to all of these issues in their briefs. Accordingly, we address each of Kline's claims of error in turn.

---

[3]Although Kline's notice of appeal states that he is appealing the district court's ruling on his motion for reconsideration, Fed. R. Civ. P. 59(e), the substance of his initial brief on appeal indicates that he actually appeals the district court's ruling on his motion for relief from judgment, Fed. R. Civ. P. 60(b).

C.

### I.  Summary Judgment

We review a district court's grant of summary judgment *de novo*.  *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment. *Anderson*, 477 U.S. at 252.

### a.  Reimer Firm

#### i.  FDCPA Claim[4]

The FDCPA prohibits a debt collector from collecting any interest, fee, expense, etc. that is not "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  It is a strict liability statute unless a debt collector can show that the alleged

---

[4] Before the district court, Kline presented, and the district court rejected, a claim that the fees charged for service of process were improper.  Kline has not raised this issue in his initial brief on appeal, so he has abandoned it.  *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016).

violation was unintentional and resulted from a bona fide error.[5]  *See* 15 U.S.C. § 1692k(a), (c); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).  So, a plaintiff does not have to prove knowledge or intent, or actual damages to succeed on such a claim.  *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014).  This scheme places the risk of penalties on debt collectors that engage in less-than-lawful activities rather than risking exposing consumers to unlawful acts of debt collection.  *Stratton*, 770 F.3d at 449.

Kline argues that Reimer charged him attorneys' fees and post-acceleration late fees, both of which he contends may not legally be collected under these circumstances.

### 1.  Attorneys' Fees

Kline contends that after he paid off his loans, a $412.96 balance remained that was due to him, but that two subsequent transactions by Barclays brought this positive balance down to zero.  In support of the theory that he was owed a balance, Kline reasons that because he paid off the loans "weeks before the December 9, 2008 payoff date on which interest was calculated in the payoff quote – he owed far less in interest than what was quoted and collected."  R. 30, Kline Br. 44.  As evidence that any amount he was owed was deducted as attorneys' fees, he points to the fact that a representative from Reimer did not know whether the two deductions were for attorneys' fees.

A November 15, 2007 letter from Reimer to Kenneth Wegner, Kline's counsel, quoting Kline's payoff amount stated that the quote "does not include any attorney fees" and went on to

---

[5] Under the FDCPA, a debt collector is protected from liability if it establishes that it committed a bona fide error by "prov[ing] by a preponderance of the evidence that the violation was unintentional, that it was the result of a bona fide error, and that the debt collector maintained procedures to avoid the error."  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014); *see also* 15 U.S.C. § 1692k(c).  Though Reimer and Lerner raised this defense in their answers, they do not pursue it on appeal, so they have forfeited this argument.  *See Hih*, 812 F.3d at 556.

state, albeit in small font, that "HomEq reserves the right to adjust these amounts and decline to pay the account in full if the payoff is insufficient to payoff [sic] the account in full for any reason, including . . . as a result of additional disbursements or adjustments made by HomEq between the date of this payoff statement and receipt of the payoff funds." Reimer Nov. 15 Quote, ECF No. 414-11, Page ID 6141–42.

Under Ohio law, a contract provision requiring the borrower to pay attorneys' fees "upon the enforcement of the lender's rights when the borrower defaults, such as a foreclosure action that has proceeded to judgment, is unenforceable." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 401 (Ohio 2009). The record makes clear that Barclays paid Reimer for attorneys' fees. However, nothing in the record indicates that Reimer collected these fees from Kline. Its payoff quote explicitly stated that it did not include such fees. Additionally, as will be discussed in further detail below, *infra* section (I)(c)(i)(1), any inference that the December 10 disbursement for attorneys' fees came from the December 11 and 24 fee adjustments is dubious. The manner in which, after the payoff, Barclays allocated its funds to pay Reimer does not subject Reimer to liability for unlawfully collecting a fee from Kline. Accordingly, Kline cannot establish that Reimer violated the FDCPA based on the alleged collection of attorneys' fees.

### 2. Post-Acceleration Late Fees

Kline also argues he was charged an illegal $69.12 post-acceleration late fee on November 16, 2007, before he paid off his loan on November 19, 2007, and that there is no evidence that he was reimbursed for that amount. The district court, however, held that Kline admitted that he was not charged post-acceleration late fees by failing to respond to Reimer's requests for admission. Kline responds that his failure to respond was an oversight, that he could not answer the requests because he had not yet taken Defendants' depositions, and that it would

be manifestly unjust to resolve this issue in Reimer's favor because he has subsequently discovered evidence that he was in fact charged these fees.

In its requests for admission, Reimer requested that Kline "[a]dmit that no late fees were assessed after acceleration with respect to the pay-off on your First Mortgage on the Subject Property, in the Underlying Foreclosure Action." Reimer Req. for Admis., ECF No. 414-17, Page ID 6279. It is undisputed that Kline never responded. Federal Rule of Civil Procedure 36 provides that if a party fails to respond to a request for admission within 30 days, that "matter is admitted." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The court may permit the party to withdraw that admission if doing so would both promote the presentation of the merits and would not prejudice the requesting party. *Id.*

We have not found, nor does Kline point to, any entry on the record indicating that he moved to withdraw this admission. However, as Kline contends, it is true that "a formal motion [to withdraw an admission] is not always required," but rather "a withdrawal may be imputed from a party's actions, including the filing of a belated denial." *United States v. Petroff-Kline*, 557 F.3d 285, 293–94 (6th Cir. 2009) (citations omitted) (internal quotation mark omitted) (concluding that the "slightly overdue response effectively served as such a withdrawal"). So Kline points to his untimely response to Corporate Defendants' requests for admissions, where he stated: "Plaintiff objects to these Requests for Admissions because plaintiff has not yet had the opportunity to take the depositions of any of the defendants." Resp. to Corporate Defendants Req. for Admis., ECF No. 417-14, Page ID 6510. Not only does this not request or otherwise indicate that Kline desired a withdrawal of his prior admission to Reimer, but there is no

indication that this belated response was filed with the court so as to allow it to engage in the proper inquiry to determine whether to permit the withdrawal.

In fact, it appears that Kline did not first suggest to the court that his admission be withdrawn until his reply brief responding to Defendants' response to his motion for reconsideration. Yet this reply, filed more than a year after Reimer's discovery request was propounded upon Kline and after this issue had been resolved in Reimer's favor, came too late. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses."). This is especially true because Reimer raised Kline's admission that it did not collect post-acceleration late fees in its motion for summary judgment, yet Kline failed to address the issue at all in his brief in response. Importantly, to allow Kline to withdraw his admission at this point would not further the presentation of the merits of his claim, and given that judgment had already been entered, it would certainly prejudice Reimer to be forced to re-litigate this issue anew. *Compare Heller Fin., Inc. v. Pandhi*, 888 F.2d 1391, at \*4 (6th Cir. 1989) (table) (concluding that the plaintiff would be prejudiced by the defendant's delayed withdrawal because permitting the withdrawal "would have left [the plaintiff] one month (or less) to prepare proofs on the disputed admission(s) after it had properly assumed since the response deadline [two months earlier] that all the admissions were established") *with Clark v. Johnston*, 413 F. App'x 804, 818–19 (6th Cir. 2011) (concluding that the plaintiff was not prejudiced by the withdrawal because "[h]e had plenty of time during the discovery process to introduce other evidence that would be proper for the court to consider"). Accordingly, we decline to entertain Kline's present attempt to withdraw his admission at this late stage of litigation.

### ii. Unjust Enrichment

Kline's unjust enrichment claim against Reimer is based on the collection of the two aforementioned fees.

To succeed on an unjust enrichment claim under Ohio law, a plaintiff must establish: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). The goal of an unjust enrichment claim is "to prevent one from retaining property to which he is not justly entitled," not to compensate the plaintiff for a loss. *San Allen, Inc. v. Buehrer*, 11 N.E.3d 739, 781 (Ohio Ct. App. 2014) (quoting *Keco Indus., Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 141 N.E.2d 465, 467 (Ohio 1957)). Accordingly, a defendant should not be held liable when it did not retain any benefit. *See Nationwide Ins. Enter. v. Progressive Specialty Ins. Co.*, No. 01AP-1223, 2002 WL 1338791, at *7 (Ohio Ct. App. June 20, 2002) (affirming judgment in favor of the defendant where it retained funds paid by the plaintiff to which it was not entitled, but paid much more to a third party in settlement of the underlying claim, reasoning that the defendant no longer retained any benefit).

Initially, the district court noted that Kline's arguments on this issue were based on the fees paid to Reimer during the 2005 foreclosure, but that the first amended complaint lacks allegations pertaining to this foreclosure. To the extent Kline's claim is based on facts surrounding the 2005 foreclosure, we decline to consider these arguments. The district court declined to consider any fees arising from the 2005 foreclosure because Kline's first amended complaint was devoid of any allegations of fees during that period. While not contesting the

district court's conclusion that allegations regarding the 2005 foreclosure were not alleged in his amended complaint, Kline merely argues that he repeatedly claimed that MERS did not hold Kline's mortgage at the time of the 2005 foreclosure, and that Defendants were on notice about the impropriety of fees from that foreclosure.

We generally do not entertain claims not raised in a complaint. *Traster v. Ohio N. Univ.*, No. 16-3320, 2017 WL 1246216, at *2 (6th Cir. Apr. 5, 2017) (citing *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007) (declining to construe a complaint to encompass a claim not mentioned therein)). Kline does not cite a single provision in his complaint that raised the applicability of the facts underlying the 2005 foreclosure to the instant litigation. Further, the cases Kline cites in support of his argument that raising this issue in his briefs is sufficient to excuse his failure to allege it in his complaint are inapplicable. *See, e.g., Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516–17 (6th Cir. 2007) (holding that extrinsic evidence can be considered to determine whether a defendant is on notice of the plaintiff's claim under Rule 15(c), which requires only that a plaintiff "attempt[]" to set forth a claim in the pleading); *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 250 n.8 (6th Cir. 2000) (suggesting the same). Therefore, we decline to consider arguments arising out of the 2005 foreclosure.

To the extent Kline's arguments are not based on facts surrounding the 2005 foreclosure, they fail as well. For the reasons discussed *supra* section (I)(a)(i)(1), Kline cannot establish that he conferred a benefit on Reimer under circumstances where it would be unjust to do so because nothing in the record indicates that Reimer collected attorneys' fees from Kline. *See Johnson*, 834 N.E.2d at 799.

Regarding the post-acceleration late fees, the transaction history shows that there was a $69.12 "Late Charge[]" on November 16, 2007. Transaction History, ECF No. 465-15, Page ID 8026. It also indicates that after Kline's loan was paid in full, a "Misapplication Reversal" for $69.12 in "Late Charges" was entered on December 4, 2007. *Id.* at 8025. When asked about these charges at a February 25, 2015 deposition, Joseph Michael Perry, Barclays' corporate designee, testified that this transaction reversed the $69.12 late charge. Perry Dep., ECF No. 465-3, Page ID 7964, 7970–71 ("[Kline] was presented with an invoice. He paid it and then they realized an error and they corrected it."). Then, on December 5, 2007, a "Late Charge Adjustment" was made for $69.12, and an "Initial Deposit" for that amount was placed into escrow. Transaction History, ECF No. 465-15, Page ID 8025. Perry testified that the $69.12 would have been returned to Kline through the December 5 initial deposit into the escrow account and that Kline would have received an escrow check for that amount. If there were any "post-fees," Kline should not have been charged.

So, it appears that prior to his payoff, Kline may have been charged a $69.12 fee that was reversed after the payoff. The record reflects that $69.12 was placed into Kline's escrow account. Kline insists that he never received a refund for this amount. Nevertheless, the record reflects that Kline was sent a reimbursement check for $273, the "difference of the quoted amount and the actual amount due the court regarding the payoff of [Kline's] loan." March 17 Letter, ECF No. 35-16, Page ID 477. Aside from his blanket denial, Kline has not shown that the $69.12 he was allegedly owed was not refunded to him. Thus, Kline cannot establish that Reimer retained any benefit in collecting the $69.12 in late fees because the record reflects that Kline was reimbursed for this amount and Kline provides nothing more than speculation to rebut

this fact. Therefore, Kline is not entitled to relief on his unjust enrichment claim against Reimer. *See San Allen*, 11 N.E.3d at 781.

### b. Lerner Firm

#### i. FDCPA Claim

Kline maintains that Lerner improperly collected $350 in attorneys' fees and $225 in referral fees.

#### 1. Attorneys' Fees

It is undisputed that Kline was charged $350 in attorneys' fees. Jacklyn Cartmill, a Barclays Senior Analysis Consultant, testified that the $350 in attorneys' fees paid to Lerner to defend the second mortgage was included in the payoff quote sent to Kline, but that a reimbursement check was mailed to Kline on December 21, 2007, for $422.32, which included the $350 in attorneys' fees. The record contains a copy of a $422.32 check from HomEq made out to Kline on December 21, 2007. Though not denying that he received a $422.32 refund check, Kline disputes that the check was for attorneys' fees, based on the fact that (1) the amount of the check was more than the $350 he paid in attorneys' fees, and (2) Lerner did not reference any refund in the February 19, 2008 letter itemizing the fees related to the payoff. Again, aside from a blanket denial, Kline does not argue how this check failed to refund him for the $350 in attorneys' fees he was mistakenly charged.

First, we reject Kline's assertion that payment must be pled as an affirmative defense under these circumstances. The cases cited by Kline in support of this proposition deal with a debtor's obligation to affirmatively plead payment as a defense against the underlying debt. *See, e.g., Bank Leumi Le-Israel v. Lee*, 928 F.2d 232, 234–35 (7th Cir. 1991) (holding, in an action to enforce a guaranty, that the defendant waived the defense of payment by not raising it before the

district court where he alleged that his obligation to pay under a guaranty was discharged because he paid the underlying debt); *Desjardins v. Desjardins*, 308 F.2d 111, 116 (6th Cir. 1962) (noting that when a defendant admits an obligation to pay a debt, that defendant bears the burden of affirmatively pleading that it has made a payment to satisfy that debt); *Lopez v. Citizens Auto. Fin.*, No. 91184, 2009 WL 626329, at *2 (Ohio Ct. App. Mar. 12, 2009) (holding, in a state-court action for breach of contract and related claims, that the trial court did not abuse its discretion in concluding the plaintiff-debtor's affidavit was self-serving where it alleged that she had made payments on her car loan, but failed to attach any evidence in support). Kline has not cited, nor have we found, a case like the instant one, holding that a debt collector is required to affirmatively plead that it refunded an improper payment as a defense to a debtor's claim that the debt collector collected illegal fees. Absent case law to support Kline's proposition, we conclude that Reimer was not required to plead the refund as an affirmative defense.

Turning to the merits of this claim, we need not decide whether the $350 charge for attorneys' fees violated the FDCPA, regardless of Lerner's refund, because Kline has utterly abandoned any argument that the refund is irrelevant to FDCPA liability. Kline failed to adequately present this issue in the district court. He was first presented with an opportunity to argue strict liability under the FDCPA in response to Reimer's and Lerner's motions for summary judgment; he did not. Kline also could have asserted the argument in his Rule 59 Motion for Reconsideration, but instead only briefly cites to law supporting that he can recover under the FDCPA notwithstanding the absence of actual damages. Therefore, Kline let the district court grant summary judgment in the Defendants' favor on his FDCPA claims, after seven years of litigation, without ever presenting any developed legal argument about why his case satisfies the essential elements of a cause of action under 15 U.S.C. § 1692f. Absent

compelling circumstances, such as clarifying a state of uncertain law, we will not entertain an issue not raised in the district court. *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993); *see also United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).

Furthermore, Kline inadequately presented this argument on appeal. The argument takes up one sentence in Kline's opening brief in a section devoted to a claim against Reimer, Wells Fargo, and MERS: "Even if Defendants had produced evidence demonstrating that the fee was ultimately refunded, the violation of §1692f(1) of the FDCPA was complete when the improper amount was 'collected.'" R. 30, Kline Br. at 42.[6] While Kline devoted a paragraph to the argument in his reply brief, issues first raised in a reply brief on appeal are forfeited, *Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016). Additionally, Kline mentions the argument when discussing only his FDCPA claim against Reimer on appeal; he says nothing about strict liability when analyzing the FDCPA claim against Lerner.

Thus, the district court did not err by granting summary judgment in favor of Lerner on Kline's FDCPA claim arising out of the firm's collection of attorneys' fees.

### 2. 3 Arch Trustee Services Fees

Kline contends that Lerner collected from him a $225 referral fee for 3 Arch that is prohibited by the Fannie Mae Guidelines.

Under the conventional meaning of the term, a referral fee would be collected if Lerner paid 3 Arch for referral of business or a client to Lerner. But that is not what happened here. First, Lerner did not pay these fees. Further, the $225 in fees were not for the referral, but rather

---

[6] Kline also observed the strict liability nature of the FDCPA, but only briefly and without analysis in a sentence in a footnote addressing a claim against Reimer.

were paid to 3 Arch "for the servicing of this loan and monitoring of the lawsuit with services that included obtaining local counsel, production of necessary documents and loan information, and billing of invoices." Lerner Feb. 19 Itemized Quote, ECF No. 465-14, Page ID 8014. 3 Arch was brought in to "vet" the interests HomEq held in the second mortgage to "see what the equity position would be." Petersmann Dep., ECF No. 416-5, Page ID 6373. "If there was equity, 3 Arch's role was to protect the right of that second [mortgage] so that [3 Arch] would notify [HomEq] that the value was there . . . ." Perry Dep., ECF No. 416-4, Page ID 6369.

More importantly, even if these fees could be properly termed "referral fees," Kline cannot establish that they were not authorized by agreement or law. *See* 15 U.S.C. § 1692f(1). Perry, Barclays' corporate designee, testified that Fannie Mae guidelines are "industry standard for servicing" loans. Perry Dep., ECF No. 465-3, Page ID 7945. According to Kline, these guidelines provide that referral fees are improper. However, Kline makes no effort to argue how the fact that these guidelines may be "industry standards" renders the fees not permitted by law within the meaning of the FDCPA, so we decline to consider this argument. *See Fowler*, 819 F.3d at 309. Therefore, Kline cannot establish that Lerner violated the FDCPA by collecting the 3 Arch services fees.

### ii. Unjust Enrichment

The basis of Kline's unjust enrichment claim against Lerner is its collection of attorneys' fees from Kline. As discussed, *supra* section (I)(b)(i)(1), the record indicates that the $350 in attorneys' fees was refunded to Kline, which is fatal to his unjust enrichment claim. *See San Allen*, 11 N.E.3d at 781.

### c. Wells Fargo[7]

#### i. Breach of Contract

To establish a claim for breach of contract, the plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 932 N.E.2d 414, 419 (Ohio Ct. App. 2010) (citation omitted). Under Ohio law, failure to show damages is generally fatal to a breach of contract claim. *W.D.I.A. Corp. v. McGraw-Hill, Inc.*, 34 F. Supp. 2d 612, 627 (S.D. Ohio 1998).

Kline alleges that Wells Fargo's collection of the following allegedly improper fees constituted a breach of contract.[8]

#### 1. Attorneys' Fees under First Mortgage

The basis of Kline's claim for attorneys' fees in connection with the first mortgage—discussed *supra* section (I)(a)(i)(1)—is that he was owed $412.96 in interest and that these funds went towards illegal attorneys' fees.

Throughout most of this litigation, Reimer, Wells Fargo, and Barclays filed with the district court an escrow history that indicated an escrow balance of zero as of December 3, 2007 ("original escrow history"). However, Russell Pope, counsel for Corporate Defendants, testified in an affidavit that on March 26, 2015, he delivered to Kline's counsel a supplemental document production of twenty-six pages of records from Barclays "relating to the post-payoff accounting

---

[7] Kline also brought a claim against Wells Fargo under the Truth in Lending Act, but the district court found that Kline abandoned this issue. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614–15 (6th Cir. 2014). Further, though Wells Fargo addresses this claim in its brief, Kline did not raise this issue in his initial brief on appeal, so he has abandoned it. *See Hih*, 812 F.3d at 556.

[8] In addition to the following fees, Kline also initially alleged that Wells Fargo charged improper fees for title reports and service of process, but the district court found that Kline abandoned his argument regarding the service fees, *see Hayward*, 759 F.3d at 614–15, and Kline did not raise the issue of either set of fees in his initial brief on appeal, so he has abandoned these issues, *see Hih*, 812 F.3d at 556.

and allocation of proceeds which took place internally after the Kline loans were repaid and satisfied." Pope Aff., 485-2, Page ID 8632–33. Pope stated that the records were uncovered three weeks after the close of discovery, so Corporate Defendants did not use those records in their motion for summary judgment filed the day after he disclosed the documents to Kline. These documents apparently included the "modified" escrow history at issue in this case.

The modified escrow activity history[9] showed a $412.96 balance from "Payoff Funds" on December 3, 2007. Modified Escrow Activity, ECF No. 465-15, Page ID 8017. This balance was increased to $482.08 from "Funds Moved from Suspense" on December 5, 2007. *Id.* After two subsequent "Fee Adjustment[s]" on December 11, 2007 and December 24, 2007, the escrow balance was reduced to zero. *Id.* Additionally, a separate "Corporate Advance Activity" document listed a $510 statutory expense disbursement for attorneys' fees to Reimer on December 10, 2007. These activities took place after Kline's loans had been paid.

Wells Fargo argues that the entries in the modified escrow history reflect only an internal reallocation of funds that was undertaken after the December 3 payoff. It contends that this did not create a balance owed to Kline; rather, this was just a common post-payoff accounting exercise that was inexplicably recorded in Kline's payoff account rather than in a separate suspense account, as is typical. In an affidavit, Jacklyn Cartmill, a Barclays Senior Analysis Consultant, testified that after Barclays received Kline's payment, an unidentified loan processor shifted $412.96 to the escrow account from the accrued interest Kline paid. According to Cartmill, this "reallocated past-due interest" was then credited to clear outstanding corporate expense advances, but Kline was not actually charged for these advances. Cartmill Aff., ECF No. 477-2, Page ID 8484. She stated that transactions like this are not typically made from a

---

[9] The modified escrow activity history was stored in the HomEq database, and there is no indication that external entities had access to this information.

zero-balanced escrow account; rather, they are typically conducted through a separate suspense account.

In a June 10, 2015 deposition of Cartmill, when asked whether the $510 in attorneys' fees was taken out of the two fee adjustments noted on the modified escrow activity, Cartmill responded that she had no way of knowing to what expense those funds were applied.[10] Cartmill could not confirm the accuracy of a Reimer representative's statement that Reimer did not collect or seek to collect attorneys' fees from Kline and that all the fees it received were from Barclays.

Additionally, the payoff quotes from Reimer state that interest will be accrued from December 1, 2006, to December 9, 2007. In a letter to Kline dated March 17, 2008, Reimer stated that it sent Kline a check for $273 for the "difference of the quoted amount and the actual amount due the court regarding the payoff of [Kline's] loan." March 17 Letter, ECF No. 35-16, Page ID 477. Kline was also sent a reimbursement check for $422.32 on December 21, 2007.

There is no evidence to suggest that Kline was improperly charged for Reimer's attorneys' fees. Reimer's payoff quote specifically stated that it did not include attorneys' fees. Furthermore, that a payment was made for attorneys' fees to Reimer on December 10 does not establish that these fees were collected from Kline simply because Kline's escrow history reflected transactions around this period. After Kline paid off his loans, Barclays was permitted to reallocate the amounts it received in order to satisfy its own obligations. A reasonable jury could not conclude that Wells Fargo collected Reimer's attorneys' fees from Kline.

The more debatable issue, however, is whether Kline was correct in that he was overcharged interest. Kline reasons that because the $14,821.28 in interest he paid was calculated through December 9 at $42.22 per day, but that his funds were posted on November

---

[10] Despite Kline's assertions, Barclays' witness did not "confirm[]" that the original escrow history misrepresented critical information, but rather stated that a borrower looking at the original would not know of the transactions on the modified escrow history.

29, 2007, he was charged ten days more in interest than he should have paid, resulting in a $422.20 overpayment. It seems that Kline alleges that the $412.96 balance on the modified escrow activity accounts for the $422.20 overpayment. Nevertheless, Kline has not alleged in his briefs on appeal an independent claim for breach of contract based on the alleged overcharge of interest. Rather, he uses his theory that he was overcharged interest to support only his claim that Wells Fargo charged him for Reimer's attorneys' fees. In fact, in response to Wells Fargo's motion for summary judgment, Kline did not allege that Wells Fargo improperly charged him interest, but rather merely alleged that Wells Fargo breached its contract with Kline by improperly charging him post-acceleration late fees, legal fees and expenses, outsourcing fees, and service of process fees. Despite having access to the modified escrow history seven months prior to filing his response and after having been granted additional time to file his response, he failed to make this argument. Kline may not expand his claims on appeal to support new theories. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) ("Allowing [a plaintiff] to present a new theory of [his] case on appeal that was not alleged below would permit [him] two bites at the apple, a practice that would be very disruptive of orderly trial procedure."). Therefore, Kline has abandoned any claim for breach of contract based on allegedly overcharged interest.

### 2. Attorneys' Fees under Second Mortgage

Kline's claim for attorneys' fees under the second mortgage is based on his argument that Lerner improperly collected $350 in legal fees. For the reasons discussed *supra* section (I)(b)(i)(1), Kline's claim that Wells Fargo breached a contract by charging him for Lerner's attorneys' fees fails; Kline cannot establish that he suffered a loss, since the $350 in attorneys' fees was refunded to him. *See W.D.I.A. Corp.*, 34 F. Supp. 2d at 627.

### 3. 3 Arch Trustee Services Fees

For the reasons discussed *supra* section (I)(b)(i)(2)—namely, that the record does not reflect that fees to 3 Arch were for a referral and Kline does not establish that the fees were not permitted by law—Kline's claim that Wells Fargo breached a contract by charging him for 3 Arch's fees fails. Because the fees were not improper, Kline cannot establish that Wells Fargo breached any agreement. *See Siemaszko*, 932 N.E.2d at 419.

### 4. Post-Acceleration Late Fees

For the reasons discussed *supra* section (I)(a)(ii)—namely, that Kline has failed to present probative evidence to rebut the evidence in the record that he was reimbursed for the $69.12 he was allegedly charged in late fees—Kline's claim that Wells Fargo breached a contract by charging him post-acceleration late fees fails because any funds charged post-payoff were refunded. Therefore Kline suffered no damages. *See W.D.I.A. Corp.*, 34 F. Supp. 2d at 627.

### d. Barclays

#### i. Unjust Enrichment

Kline bases his unjust enrichment claim on the alleged collection of post-acceleration late fees. For the reasons discussed *supra* section (I)(a)(ii)—namely, that Kline has failed to present probative evidence to rebut the evidence in the record that he was reimbursed for the $69.12 he was improperly charged in late fees—the record indicates that any post-acceleration late fees were refunded to Kline, which is fatal to his unjust enrichment claim. *See San Allen*, 11 N.E.3d at 781.

### e. MERS

#### i. Breach of Contract[11]

The breach of contract claim against MERS is based on the same allegations as the claim against Wells Fargo that Kline was improperly charged $350 in attorneys' fees. For the reasons discussed *supra* section (I)(b)(i)(1), Kline's claim fails because the record indicates that Kline was refunded the $350 in attorneys' fees, so he did not suffer any damages. *See W.D.I.A. Corp.*, 34 F. Supp. 2d at 627.

## II. Rule 60(b) Motion for Relief From Judgment

Denial of Rule 60(b) relief is reviewed for abuse of discretion. *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012). An abuse of discretion exists when the court is left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1110 (6th Cir. 2012). In conducting this review, this court does not consider the underlying judgment, but rather ascertains whether one of the circumstances specified in Rule 60 exists. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

Kline argues three bases for Rule 60(b)(3) relief: (1) Corporate Defendants failed to produce critical documents; (2) Defendants misrepresented to the court amounts owed by and collected from Kline; and (3) counsel for Corporate Defendants made misrepresentations to the court. In light of these alleged misrepresentations, Kline contends that he is entitled to an evidentiary hearing to determine whether relief should be granted under Rule 60.

---

[11] Before the district court, Kline also presented a claim against MERS for violation of the OCSPA, but has abandoned this issue by failing to raise it in his briefs on appeal. *See Hih*, 812 F.3d at 556.

This court's review of the district court's decision is "limited and deferential," *Tyler*, 749 F.3d at 509, because the trial judge is in the best position to know whether fraud has been perpetrated on the court, *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1122 (6th Cir. 1976). Furthermore, Rule 60(b) is not a vehicle to give the losing litigant a second bite at the apple. *Tyler*, 749 F.3d at 509. In *Thurmond v. Wayne County Sheriff Department*, this court rejected the plaintiff's claim for Rule 60(b)(3) relief where his claims that the defendants committed discovery abuses, though "supported by more thorough briefing . . . [was] not based on any new revelations of misconduct." 564 F. App'x 823, 828, 830 (6th Cir. 2014). Observing that such "relief is not available to remedy misconduct known to the movant before judgment entered," the court rejected the plaintiff's repeated attempts to revisit the instances of misconduct known to the plaintiff prior to entry of judgment as contrary to the law of the case doctrine. *Id.* at 830; *see also Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 851–52 (6th Cir. 2010) (declining Rule 60(b) relief where the misconduct at issue was brought to light prior to the entry of judgment). Regarding all of the alleged misrepresentations against the Defendants, the district court concluded that Kline had not demonstrated that any misrepresentations were not known to him prior to the entry of judgment, so he could not form the basis for relief under Rule 60. This fact is undisputed on appeal. Accordingly, we affirm the district court's denial of Rule 60 relief.

### III.    Motion to Strike Class Allegations

We review the district court's grant of a motion to strike for abuse of discretion. *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003). Related to the district court's decision to strike Kline's class allegations was its decision to decline to reopen discovery. This court reviews such a decision for abuse of discretion as well. *Grant v. Metro. Gov't of Nashville*

& *Davidson Cty.*, 646 F. App'x 465, 467 (6th Cir. 2016) (citing *Lee v. Metro. Gov't of Nashville*

& *Davidson Cty.*, 432 F. App'x 435, 443 (6th Cir. 2011)).

After Kline missed his June 9, 2015 deadline to file a motion for class certification,

Defendants jointly moved to strike the class allegations.  The district court rejected Kline's

argument that his failure to timely file a class certification was due to discovery disputes that he

needed extended discovery to resolve.  The deadline to file a motion for class certification was

June 9, 2015, and the court "could [not] have been clearer" in repeatedly emphasizing the

importance of adhering to this deadline.  *Id.* at 7892–93 (citing Decision Overruling Mot. to

Amend, ECF No. 415, Page ID 6290, 6301, 6304).

Kline contends that he was not required to file a formal motion for an extension of time.

Instead, he contends that only a pre-deadline request was required, and that an extension should

have been justified based on the newly produced documents.[12]

The court must make a decision to certify a class "[a]t an early practicable time" after a

party brings suit.  Fed. R. Civ. P. 23(c)(1)(A).  Kline alleges that he requested an extension of

time to conduct additional discovery.  Requests for a court order generally must be made by

motion.  Fed. R. Civ. P. 7(b).  However, if the time to complete a task has not yet expired, the

court may extend the time to complete the act upon a party's mere "request" if good cause is

shown.  Fed. R. Civ. P. 6(b)(1)(A).  The district court construed Kline's request as one to reopen

discovery under Federal Rule of Civil Procedure 56, which allows a party additional time to

conduct discovery if that party establishes that "it cannot present facts essential to justify its

---

[12] Kline also maintains that the district court had an "independent obligation" to decide whether a case is properly brought as a class action.  Reimer argues that Kline waived this argument by failing to raise it in opposition to the joint motion to strike.  Although Kline does respond to Reimer's argument in his reply brief, and it appears that neither his response in opposition nor his motion for reconsideration of the district court's decision raise this argument.  We decline to consider it because the argument was never properly before the district court.  *Hayward*, 759 F.3d at 614–15.

opposition." Fed. R. Civ. P. 56(d)(2). Absent a judge's consent and "good cause," a scheduling order may not be modified. Fed. R. Civ. P. 16(b)(4). Furthermore, the district court "may issue any just orders" if a party does not adhere to a scheduling order. Fed. R. Civ. P. 16(f)(1)(C).

Kline was only required to "request" an extension of time prior to the June 9 deadline for class certification.[13] His May 7 letter to the court "request[ed] a status conference with regard to certain issues which have arisen as a result of additional documents produced by [Corporate Defendants]" and asserted his "right" to reopen depositions of Corporate Defendants and to receive a privilege log from MERS. May 7 Letter, ECF No. 426, Page ID 6795–96. Nothing in this letter mentions the class certification filing, much less the fact that Kline wanted additional time to file it. Nor do the briefs to the court where Kline reasserted this request prior to the June 9 deadline. And notably, not even in his briefs on appeal does Kline present an argument as to how this belated discovery production had any effect on his class claims. The district court, therefore, did not abuse its discretion in concluding that Kline did not show good cause for an extension of time and that Kline did not justify the need for additional discovery.

Kline insists that the district court was required to engage in a four-factor analysis prior to striking his class allegations. However, the only case he cites in support of this "well-settled" requirement deals with a dismissal for failure to prosecute a *complaint*, not individual allegations within the complaint. *See Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001). He cites no precedent applying this factor test to the situation at issue, so we decline to consider it.

Kline failed to establish a reasonable excuse for his failure to timely file for class certification after the district court's repeated emphasis on the necessity of complying with this deadline. In light of this, the district court did not abuse its discretion in issuing a just order

---

[13] Like the district court, we will not consider Kline's April 10, 2015 letter "that was never filed with the Clerk, never served on Defendants, and sent in clear violation of the Local Rules" as a timely request to reopen discovery. *See* Omnibus Decision, ECF No. 463, Page ID 7891.

striking Kline's class allegations when Kline failed to adhere to its deadline set seven years after the initiation of this litigation. *See Chrisman v. Countrywide Home Loans, Inc.*, No. 3:07-CV-333, 2010 U.S. Dist. LEXIS 29934, at *1–*5 (E.D. Mich. Mar. 26, 2010) (granting defendants' motion to strike class allegations notwithstanding discovery disputes where the plaintiff failed to comply with the class certification deadline and failed to show good cause in his motion to amend the scheduling order).

## IV.    Motion for Leave to Amend

This court reviews the district court's denial of a motion for leave to amend a complaint for abuse of discretion.  *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008).

On December 21, 2015, Kline moved for leave to file an amended complaint, seeking to add RICO and fraud claims.  The district court concluded that an amendment at this date would be futile, and rejected Kline's argument that he had only recently been able to "flesh[] out" his RICO claims, reasoning that Kline's claims that Defendants falsely represented the owner of his notes and allegations that Defendants charged him improper fees were pled over seven years prior in Kline's complaint.

While not addressing the district court's finding that facts sufficient to allege the fraud and RICO claims in the second amended complaint were already alleged in Kline's original complaint, Kline asserts that his motion should have been granted because it included facts revealed during discovery that should have been produced earlier and that can form the basis for fraud and RICO claims.

Federal Rule of Civil Procedure 15 allows a party to amend a pleading with the court's leave "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The court may deny leave to amend "when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure

deficiencies in the complaint." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (alteration omitted) (citation omitted). "[A] party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).

Kline alleges that he sought leave to amend his complaint to add fraud and RICO claims based on facts uncovered since February 2015, namely, as relevant here, allegations that Defendants had concealed that Kline was improperly charged fees in connection with the foreclosures on his home and falsely represented the owner of the notes. The district court did not abuse its discretion in denying leave to amend based on these allegations. First, while he insists that his motion was based on newly produced discovery, the record indicates that Kline made similar allegations throughout this litigation. For instance, his original complaint, filed November 10, 2008, alleges that Wells Fargo and Reimer misrepresented the owner and holder of Kline's mortgages. He further alleged that Wells Fargo, HomEq, and Reimer charged Kline for fees that were illegal under federal or state law. Also, in support of his motion to amend, Kline filed a declaration, dated March 14, 2014, stating that Kline was in the process of preparing an amended complaint to add a RICO claim. The recently disclosed evidence did little more than provide support for allegations that Kline made years prior. His failure to file for leave to amend until now suggests bad faith. Furthermore, Kline's complaint already alleges a laundry list of claims against multiple defendants; adding claims and plaintiffs nearly a decade after the original complaint was filed and significant progress towards resolution of the claims had been made would have prejudiced Defendants. Accordingly, the district court did not err in denying Kline leave to amend.

D.

For the foregoing reasons, we **AFFIRM** (1) the district court's grant of summary judgment to all Defendants; (2) the district court's denial of Kline's Rule 60(b) motion for relief from judgment; (3) the district court's grant of Defendants' joint motion to strike; and (4) the district court's denial of Kline's motion for leave to amend.